## WILLACY COUNTY v. VALLEY BAPTIST HOSPITAL et al.

### No. 8452.

Court of Civil Appeals of Texas. San Antonio. June 11, 1930.

A. B. Crane, of Raymondville, for appellant.

W. H. Crowell, of Raymondville, for appellees.

SMITH, J.

On a Saturday night in July, 1929, Rafael Barbosa, a resident of Willacy county, was struck by an automobile, and seriously injured. He lay wounded by the roadside the remainder of the night. The next morning his condition was discovered by the sheriff of Willacy county, who in turn called the county judge, who directed that all necessary medical aid be given the injured man, stating that the county would pay "the expenses." The sheriff thereupon called in Dr. McCann, a local physician, who upon examination of the injured man concluded that an operation was necessary. There was no hospital in Willacy County and Sheriff Snow, accompanied by Dr. McCann, rushed Barbosa to the Valley Baptist Hospital at Harlingen, in Cameron county, where another physician, Dr. Davidson, was called in, and performed an operation. A few days later Barbosa died as a result of his injuries. Afterwards Dr. McCann, Dr. Davidson, and the hospital filed claims against the county for $30, $150, and $89, respectively, as their fees for the services rendered by them to Barbosa. The county commissioners' court rejected these claims, and the claimants each filed suit against Willacy county, in a justice of the peace court. The three suits were consolidated and judgment was rendered in favor of the plaintiffs for the amounts of their respective claims. On appeal to the county court a like judgment was rendered upon a directed verdict, and Willacy county has appealed.

The judgment is based upon the assumption that Barbosa was a pauper and therefore such a charge upon the county as to render it the duty of the latter to furnish him the services for which this suit was brought; that the county judge was clothed with authority to bind the county to his agreement to pay for such services, although it is conceded that the commissioners' court as a body, or the commissioners individually, had taken no action to declare Barbosa a pauper or to authorize the county judge to so bind them, and no such matters had ever been presented to them. Willacy county, with but little population, had no public or private hospitals, such as are being operated in counties of large population. But the county had an official county health officer, whose duties included that of attending injured persons in such cases as this. His services were available in this instance, but he was given no opportunity to render them by the authorities, who called another physician to attend Barbosa. It should be said to the credit of that great profession, that any reputable physician would have rendered these services freely and without question of reward and we have no doubt—the record supports the assumption—that Drs. McCann and Davidson would have rendered their services to Barbosa in this emergency just as willingly and efficiently, without assurance of remuneration, as they did with such assurance. But having been advised that the county would pay their bills, they were of course justified in presenting claims therefor. So it is a matter of common knowledge, and to their credit, that most hospitals are charitably equipped in these hazardous times with facilities for caring for patients in emergencies of this sort, without advanced or secured payment.

Accidents, such as this, occur in this state every day, with resulting fatal injuries to persons of every class, and the courts should not be called upon to hold that in all such cases, where the deceased victim leaves no estate out of which to pay his medical and hospital bills, the counties shall become liable therefor *as a matter of course*, which is in effect what appellees contend for. The powers and duties of county commissioners' courts, and the obligations of the counties to paupers, are fixed by statute, and cannot be enlarged upon by unnecessary implication. These powers and duties, in so far as applicable here, are defined in and restricted by the provisions of articles 2351 and 4438, Rev. St. 1925. In article 2351 it is provided that each commissioners' court shall (subdivision 11) "provide for the support of paupers * * * residents of their county, who are unable to support themselves," and (subdivision 12) "for the burial of paupers." In article 4438 it is provided that "If there is a regular established public hospital in the county, the commissioners court shall provide for sending the indigent sick * * * to such hospital." In the latter provision the duty and authority of the commissioners' court to send the indigent sick to hospitals is limited to "public" hospitals within the county, which provision, by necessary implication, excludes any duty or authority to send such persons to private hospitals, or to public hospitals without the county. Even if Barbosa was within the class defined as "indigent sick," the commissioners' court as a body, much less the county judge acting singly, was under no duty, and was denied authority, to send Barbosa to a hospital, either public or private, outside the county.

The provision that the commissioners' court shall support "paupers who are unable to support themselves" is inapplicable in this case, for the plain reason that the facts

do not put Barbosa within that class. The record shows that he had been a resident of Willacy County for twenty-five years. He lived with and supported his wife and her two children by a former marriage. He also has a daughter and son, inferably grown and supporting themselves. Barbosa was a farm hand, and for the four years next preceding his death had worked for wages upon the farm of a Mr. Gilliland. He was always able to and did support himself and family, and although he apparently had no property, and had been from time to time in debt to Gilliland for advances, he paid off the balance of that debt the day before he was injured in this accident. After paying the debt he had enough money on hand to purchase a week's supply of provisions, which he bought and took home. That night he took what change he had left from these purchases and went to a neighborhood dance, where he remained until early morning, taking "a few drinks" in the meantime. On his way home from the dance he was run over and mangled by a passing automobile. So far as the record shows, he was no worse off, financially, than is usual among those of his class. He owed no money, had always paid his way in support of himself and those dependent upon him up to the moment of his injury, had never sought or received charity from any source, so far as the record shows, and the question of his classification as a pauper had never been raised from any source, or considered by the county or any other public authority. It is perfectly obvious that he was not a pauper, in law or in fact, under any technical or practical definition of the term. And the mere fact that he died without leaving an estate sufficient to defray the cost of the services rendered him by appellees did not render the county, as a matter of course, liable therefor.

The commissioners' court had provided a county health officer to render medical and professional services in such cases, and the county judge nor any other single official could authorize employment of others, unless by specific, or at least general, authority from the commissioners' court. No such authority had been given, but, on the other hand, was negatived in this case by the existing custom of the commissioners' court to reject claims of this nature.

Under the provisions of article 4438, the county was under no duty to send Barbosa to any hospital, there being no public hospital in the county, and under the implied restriction of this provision it is doubtful if the county could be bound by the commissioners' court, certainly not otherwise, to send him to a hospital without the county, at public expense.

The tragedy was pathetic in its consequences, and the action of the county judge and sheriff under the distressing circumstances was the expression of noble and humane impulses. But the liabilities of counties are fixed by law and cannot be extended by the courts beyond the plain authority of the statutes.

The judgment must be set aside, and, as the controlling facts appear to be fully developed, it is the duty of this court to render such judgment as should have been rendered below. Accordingly, the judgment is reversed, at the cost of appellees, and judgment here rendered that appellees take nothing by their suit.