**Waivie JOHNSTON, et al., Plaintiffs,**

v.

**Rod SHAW, et al., Defendants.**

**Civ. A. No. CA-5-80-133.**

United States District Court,
N.D. Texas,
Lubbock Division.

Dec. 10, 1982.

On Motion to Amend Dec. 21, 1982.

---

**7.** 7 C.F.R. Part 1924, Subpart B, provides for management assistance to be given to borrowers.

Stephen C. McIntyre, West Texas Legal Services, Lubbock, Tex., for plaintiffs.

Kay Fletcher, Asst. Crim. Dist. Atty., Lubbock, Tex., for defendants.

## MEMORANDUM

WOODWARD, Chief Judge.

This case came on for trial before the court, without a jury, on the 7th day of December, 1982 with the attorneys and parties present. This memorandum shall constitute the court's findings of fact and conclusions of law and reference is here made to the stipulations as to the agreed facts made by the parties and contained in the Pre-Trial Order of this court, which are adopted by the court as additional findings of fact.

■ The court has jurisdiction to hear this case under 28 U.S.C. § 1343(3) and (4) and 42 U.S.C. §§ 1983 and 1988.[1]

The four plaintiffs in this suit, Waivie Johnston, Ester Reyna, Thelma Clark, and Emma Rodriguez, are unsuccessful applicants for emergency financial assistance with the Lubbock County General Assistance Agency (LCGAA), Lubbock County, Texas. The defendants are the County Judge and members of the Lubbock County Commissioners Court, all in their official capacities, and the Director of the LCGAA, also in her official capacity. The complaint also names the Lubbock County Commissioners Court itself as a defendant.

In June of 1980, the plaintiffs were residents of the Coronado Apartments in Lubbock, Texas and certain of their utility services either had been terminated or were about to be terminated for nonpayment of current bills. Plaintiffs unsuccessfully applied to the LCGAA for emergency financial assistance to remedy or prevent the termination of their utility services. No *written* reasons for the denial of their applications were given plaintiffs. No written or oral notice of their right to appeal these determinations, the appellate procedures, or the LCGAA's eligibility standards were given plaintiffs.

The evidence establishes that at the time in question it was not the policy or practice of the LCGAA to provide *written* reasons for denial of assistance unless an unsuccessful applicant specifically requested such. It was also the practice of the LCGAA to orally inform unsuccessful applicants of their right to appeal adverse decisions only if such persons specifically requested such information or demonstrated disagreement with the decisions of their case workers. These plaintiffs did not receive either written or oral notice of their right to appeal rejection of their applications.

Lubbock County established the LCGAA pursuant to *Tex.Rev.Civ.Stat.Ann.* art. 2351(11) (Vernon 1971),[2] to furnish emergency relief to those who meet certain eligibility requirements. The County has regularly provided funds in its budget for the staffing of this agency and certain monies to afford emergency relief to qualified applicants.

Plaintiffs seek nominal damages, injunctive relief, and an award of attorney's fees for the deprivation of their rights under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

For the past several months, the LCGAA has established a policy and followed a

---

1. Federal courts have jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 to hear claims of alleged deprivations of procedural due process rights under the Due Process Clause of the Fourteenth Amendment. *Jackson v. O'Bannon,* 633 F.2d 329, 331 (3d Cir. 1980); *Goodrich v. Supreme Court of the State of South Dakota,* 511 F.2d 316, 317 (8th Cir. 1975); *see also Carey v. Piphus,* 435 U.S. 247, 249–50, 98 S.Ct. 1042, 1044–45, 55 L.Ed.2d 252 (1978).

2. Each commissioners court shall: * * *
11. Provide for the support of paupers and such idiots and lunatics as cannot be admitted into the lunatic asylum, *residents of their* county, who are unable to support themselves. By the term resident as used herein, is meant a person who has been a bona fide inhabitant of the county not less than six months and of the State not less than one year.

practice of affording written notice to all unsuccessful applicants of the reasons for the rejection of their applications and their right to appeal that decision.

## THE ELEVENTH AMENDMENT DEFENSE

The defendants have pled and asserted that the plaintiffs cannot recover any damages or attorney's fees and are not entitled to injunctive relief because the Eleventh Amendment bars this action in its entirety. Defendants misconstrue the scope of that amendment.

### A

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. amend. XI.

"While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Employees v. Department of Public Health and Welfare,* 411 U.S. 279, 280, 93 S.Ct. 1614, 1615, 36 L.Ed.2d 251 (1973); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

The Eleventh Amendment does not prohibit the relief sought by the plaintiffs in this case. The State of Texas is not a party to this suit and no relief is sought against the State or any of its agencies.

 The relief sought against the county and its officers in this case is not barred by the Eleventh Amendment. That amendment does not prevent suit against counties or municipal corporations. "[A] county does not occupy the same position as a state for purposes of the Eleventh Amendment." *Edelman v. Jordan,* 415 U.S. 651, 667 n. 12, 94 S.Ct. 1347, 1358 n. 12, 39

L.Ed.2d 662 (1974). "It has long been established that actions against a county can be maintained in United States courts in order to vindicate federally guaranteed rights." *Griffin v. County School Board of Prince Edward County,* 377 U.S. 218, 233, 84 S.Ct. 1226, 1234, 12 L.Ed.2d 256 (1964). "The bar of the Eleventh Amendment to suit in federal courts extends to States and State officials in appropriate circumstances, . . . but does not extend to counties and similar municipal corporations." *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). *See Lincoln County v. Luning,* 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890). *See also Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 726–28 (5th Cir.1982).

In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities and other local governmental units were "persons" within the meaning of that term in 42 U.S.C. § 1983, but limited its holding to "local government units which are not considered part of the State for Eleventh Amendment purposes." *Id.* at 690 n. 54, 98 S.Ct. at 2035 n. 54. Therefore, the question before the court in this case is whether the defendant County (had it been sued directly) and its officials are the alter ego or mere administrative arm of the State of Texas. *Laje v. R.E. Thomason General Hospital,* 665 F.2d at 726–27 n. 2. "The answer depends, at least in part, upon the nature of the entity created by state law." *Mount Healthy,* 429 U.S. at 280, 97 S.Ct. at 572. "While local government entities may, in some circumstances, be considered an arm of the state, thereby deriving the state's Eleventh Amendment immunity, . . . independent local political subdivisions are not entitled to such immunity even though they may 'exercise a slice of state power.' " *Laje,* 665 F.2d at 727.

A federal court must examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a

suit against the state itself. * * * Courts typically look at the degree of local autonomy and control, and most importantly whether the funds to defray any award would be derived from the state treasury. *Id.*

Applying these principles to Lubbock County, it is clear that Lubbock County's administration of this emergency relief program through the LCGAA is simply too attenuated from the State of Texas to support an extension of the Eleventh Amendment. Lubbock County's Commissioners Court established the eligibility standards for emergency relief, not the State of Texas. Funds for the program are budgeted by the County and paid from County, not State funds. Appeals from adverse decisions of the LCGAA go to the Commissioners Court. There are no administrative provisions providing for a further appeal to any state agency. While it is true that art. 2351(11) directs the County Commissioners Court to provide for the support of paupers, the degree of freedom from state supervision with which the County operates and funds this program, and the independence of Lubbock County in general, both lead to a conclusion that in administering this program Lubbock County is not merely an alter ego or administrative arm of the State of Texas.

### B

While it is well-recognized that the Eleventh Amendment provides immunity to States and state agencies from federal court suit, *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 56 L.Ed.2d 1114 (1978), *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), it provides no barrier to plaintiffs in this suit against county officials. "It has been settled law since *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that suits against state and county *officials* to enjoin them from invading constitutional rights are not forbidden by the Eleventh Amendment." *Griffin· v. County School Board of Prince Edward County,* 377 U.S. 218, 228, 84 S.Ct. 1226, 1231, 12 L.Ed.2d 256 (1964) (emphasis added). If state *officials* cannot be pro-

ceeded against for declaratory relief, putative plaintiffs might in some circumstances have to await the institution of state-court proceedings against them in order to assert their constitutional claims. This is not the way the law has developed. *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 737, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980). "Suits against state *officials* in federal courts are not barred by the Eleventh Amendment." *Id.* (emphasis added).

However, a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). "The distinction between that relief permissible under the doctrine of *Ex Parte Young* and that found barred in *Edelman* was the difference between prospective relief on the one hand and retrospective relief on the other." *Quern v. Jordan,* 440 U.S. at 337, 99 S.Ct. at 1143. In *Edelman,* it was a virtual certainty that any expenses resulting from the injunctive relief would be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action. *Id.* at 337–38 n. 6, 99 S.Ct. at 1143 n. 6. In a 42 U.S.C. § 1983 action, a federal court's remedial power is necessarily limited to prospective injunctive relief, *Ex Parte Young, supra,* and may not include a retroactive award which requires the payment of funds from the state treasury. *Quern v. Jordan,* 440 U.S. at 338, 99 S.Ct. at 1143; *Edelman v. Jordan,* 415 U.S. at 677, 94 S.Ct. at 1362. In summary then, a federal court may, consistent with the Eleventh Amendment, enjoin state and county *officials* to conform their *future* conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury. *Quern v. Jordan,* 440 U.S.·at 337, 99 S.Ct. at 1143; *Edelman v. Jordan,* 415 U.S. at 667–68, 94 S.Ct. at 1357–58.

It is likewise clear by this point that the Eleventh Amendment does not bar suits

for damages brought against state or county officials. The cases found in the reporters involving damage suits brought under § 1983 against state officials are legion. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Were this not the case, the Supreme Court's recent opinions in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *Wood v. Stickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), all of which recognized varying degrees of immunity for state officials from *damage* suits brought under § 1983, would be superfluous.

■ The discussion above makes clear that the Eleventh Amendment does not bar suits in federal court brought by private parties against state or county *officials* for damages or injunctive relief, where the injunctive relief sought is prospective in nature only and will not result in a raiding of the state treasury. Since all of the relief requested by plaintiffs in this case clearly falls within the category of relief just described, the Eleventh Amendment has no applicability to the case at hand.

### THE ABSTENTION DEFENSE

■ At the commencement of the trial of this case on the merits, defendants sought to invoke the judicial doctrine of abstention and suggested that this case should be dismissed without prejudice. The court, in the exercise of its discretion, rejects this suggestion for the following reasons:

#### A

The defense was not raised until the very last moment prior to trial, all parties had previously announced ready for trial, and to grant such a motion and dismiss plaintiffs' case at that time and under those circumstances would have been prejudicial to the rights asserted by the plaintiffs.

#### B

The judicial doctrine of abstention, as enunciated in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), does not apply to the case at hand. In *Pullman,* the Supreme Court held that "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975). The Supreme Court has warned however, "that because of the delays inherent in the abstention process and the danger that valuable federal rights might be lost in the absence of expeditious adjudication in the federal court, abstention must be invoked only in 'special circumstances,' ... and only upon careful consideration of the facts of each case." *Id.* Despite these warnings, this court is aware that the Fifth Circuit has recently approved the application of the *Pullman* abstention doctrine by a district court in a procedural due process suit. *Brooks v. Walker County Hospital District,* 688 F.2d 334 (5th Cir.1982).

For the *Pullman* doctrine to apply, there must be an unsettled question of state law, resolution of which might avoid the necessity of deciding the federal question presented. Neither party in this case has alleged that there are any ambiguities with regard to either art. 2351 or the eligibility standards enunciated by Lubbock County. Article 2351 has been the law of the State of Texas for over a century now and in that time there has been no challenge to its clarity or constitutionality. On the other hand, it has been interpreted, apparently without difficulty, by counties in Texas for the same period of time. The court finds under these circumstances that the primary prerequisite for application of the *Pullman* doctrine, ambiguity in state law, is not present in this case. Therefore, *Pullman* abstention is not appropriate.

### C

In *Brooks v. Walker County Hospital District, supra,* the Court of Appeals affirmed a district court's order of abstention. In that case, the district court felt that Article IX, § 9 of the Texas Constitution was ambiguous with regard to the nature of the property interest created by that section. The nature of the entitlement created by the Texas Constitution was critical to determining the "amount of process due" in that case. *Brooks,* 688 F.2d at 338. Therefore, it was appropriate for the district court to abstain, in the hope of obtaining a clarifying interpretation of Article IX, § 9 from the courts of Texas.

The case at hand is readily distinguishable. Here, plaintiffs' property interest, if such exists, arises not solely from a general delegation of authority to a local governmental unit, but also from the eligibility standards set out by Lubbock County. A property interest, or entitlement to government benefit, must consist of more than a mere unilateral expectation of receipt of that benefit; there must be more than an abstract need or desire for it. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "There must be a legitimate claim of entitlement to it." *Id.* The welfare recipients in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), had a claim of entitlement grounded in the statute defining eligibility for them. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. If the plaintiffs in this case have a claim of entitlement to benefits, it must likewise be grounded in the *standards for eligibility* set forth by Lubbock County, not merely the general mandate of art. 2351(11). These standards are listed in Ex. 1, attached to the Pre-Trial Order in this case, and do not permit a finding that they are ambiguous in any significant aspect. It is therefore extremely doubtful, especially considering the dearth of case law interpreting art. 2351, that a Texas state court will soon add anything substantial to the plain meaning of art. 2351 which will alter the nature of the entitlement, if any, presently possessed by plaintiffs. That entitlement, if it exists at all, arises principally from the eligibility standards set out by Lubbock County, not solely from art. 2351.

Therefore, because the defendants' presentation of their motion was untimely, because there is no ambiguity with art. 2351, and because the principal source of an entitlement, the eligibility standards, is not ambiguous, the defendants' suggestion that this court apply the *Pullman* abstention doctrine is rejected.

### THE REQUIREMENT OF A PROPERTY INTEREST

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

To determine whether due process requirements apply in the first place, one must determine whether the interests at stake fall within the meaning of the terms "liberty" or "property," as used in the Fourteenth Amendment. Here, plaintiffs allege that they have a legitimate claim of entitlement to a governmental benefit, sufficient to constitute a protected property interest.

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

\* \* \* \* \* \*

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

■ Plaintiffs in this case had more than a mere unilateral expectation of assistance. They had a claim of entitlement

flowing from the combined impact of art. 2351(11) and the legislatively-determined eligibility requirements. That claim of entitlement stems from art. 2351(11) and the action of defendants in establishing eligibility requirements and an agency to dispense emergency relief to those in need who qualify.

As in *Goldberg v. Kelly,* 397 U.S. at 256 n. 1, 90 S.Ct. at 1014 n. 1, the plaintiffs in this case have a claim of entitlement to subsistence benefits grounded in the *eligibility requirements* set forth by the County. *See Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Just as the plaintiffs in *Goldberg* were not required to show that they were, in fact, within the statutory terms of eligibility before they were entitled to due process protections, plaintiffs in this case are not required to make an initial showing that they meet all of the eligibility requirements before they become entitled to at least a modicum of rudimentary procedural fairness. To place such a burden on plaintiffs would obviate the need for any procedures at all.

Even if plaintiffs' applications were correctly rejected, and even if they did not suffer any actual injury, the fact remains that they may have been deprived of their right to procedural due process. " 'It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the outcome of a hearing ....' " *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978).

It is the conclusion of this court that plaintiffs in this case have a legitimate claim of entitlement to a government benefit, sufficient to invoke the procedural protections of the Due Process Clause of the Fourteenth Amendment in determining their eligibility.

## HOW MUCH PROCESS IS DUE

It is axiomatic that a person possessing a legitimate claim of entitlement to a benefit has a property interest in that benefit, and is entitled to the protections of the Due Process Clause of the Fourteenth Amend-

ment. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976); *Board of Regents v. Roth,* 408 U.S. at 569–70, 92 S.Ct. at 2705. Once the hurdle of showing a protected property or liberty interest has been surmounted, the next inquiry is the determination of what procedures are constitutionally mandated. This involves consideration and balancing of several factors. *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903. However, in this case the plaintiffs agreed in open court that, assuming the existence of a protected property interest, the present procedures employed by defendants in dealing with LCGAA applicants are sufficient to satisfy all constitutional requirements.

## CONCLUSION

In view of the foregoing, the court concludes that plaintiffs in this case had a protected property interest at the time they applied for assistance with the LCGAA, and that they were entitled to the protections of the Due Process Clause of the Fourteenth Amendment. At the time they applied, procedural due process was not afforded them and they are entitled to recover at least nominal damages, *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978), even though they did not request nor attempt to prove actual damages. Reading the complaint liberally, as this court is required to do in this type of case, plaintiffs are entitled to recover these damages from the named defendants. *See Scheuer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974).

## REMEDY

The court will enter a judgment as follows:

1. Nominal damages in the amount of $1.00 to each plaintiff are hereby awarded against defendants.

2. Inasmuch as the plaintiffs have agreed that all the constitution requires in this case are the present procedures employed by defendants and that defendants have determined that fairness requires the

giving of written notices stating the reasons for denial of applications, right to appeal, and the appropriate appellate procedures, the court has determined that the injunctive relief sought by plaintiffs is no longer necessary. Counsel for plaintiffs advised the court that he felt assured the defendants will continue the present policies and procedures for processing applications at the LCGAA.

3. Plaintiffs are the prevailing party in this case. However, the court has not received any evidence as to the proper amount of attorney's fees, but same are entitled to be taxed as part of the costs in this suit. The plaintiffs may, if they so elect, make application for attorney's fees, with supporting documentation, after the judgment entered herein has become final by operation of law or at the termination of any appellate procedures.

A judgment will be entered accordingly.

### ON MOTION TO AMEND

The court rendered its judgment in this case on December 9, 1982, in favor of plaintiffs. Defendants have filed a motion requesting that the court amend its findings of fact and conclusions of law. The grounds for this motion are as follows: (1) the court erred in finding that plaintiffs had not been orally informed of their right to appeal; (2) the court erred in refusing to abstain from deciding the merits of this case; (3) the court erred in concluding that the Eleventh Amendment does not bar this action; and (4) the court erred in concluding that plaintiffs had a protected claim of entitlement sufficient to guarantee them at least a modicum of procedural fairness.

The court concludes that this motion must be denied. First, there is evidence in the record that plaintiffs were not orally informed of their right of appeal. Second, defendants are correct in pointing out that

1. Defendants' citation to *United Carolina Bank v. Board of Regents,* 665 F.2d 553 (5th Cir. 1982) is not in point. That case merely recognizes that suit against *state* agencies and *state* officials in their official capacities are barred by the Eleventh Amendment. *Id.* at 556–61. This case, on the other hand, is a suit against

the court erred in stating that the defense of abstention was raised initially at trial. That defense was raised in both defendants' answer and their motion to dismiss, which the court denied. As such is the case, paragraph A under THE ABSTENTION DEFENSE section of the court's memorandum is hereby stricken. Abstention was, however, raised again by defendants at trial and was again rejected. The other reasons for denial of abstention contained in the court's memorandum of December 9, 1982 are sufficient to justify the court's refusal to abstain. Third, the Eleventh Amendment issue has been dealt with sufficiently by the court in its memorandum of December 9.[1] Finally, the court's position on the substantive merits of the case are set forth in its memorandum of December 9. Therefore, defendants' motion is denied.

It is so ORDERED.

officials of an independent local governmental unit, (*i.e.,* Lubbock County), not entitled to Eleventh Amendment immunity under the holding in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).