

# THE ATTORNEY GENERAL
## OF TEXAS

October 26, 1987

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable John L. Barnhill
Crosby County Attorney
County Courthouse
Crosbyton, Texas    79332

Opinion No. JM-815

Re: Obligation of a county under article 2351(11), V.T.C.S., to provide for the relief of paupers

Dear Mr. Barnhill:

You ask several questions about the obligation of a county under article 2351(11), V.T.C.S., to provide support for paupers. Your first question is whether article 2351(11) creates a property right cognizable under the due process clause of the 14th Amendment to the United States Constitution.

The due process clause restrains the government from depriving a person of a liberty or property interest without adequate procedural safeguards. See Board of Regents v. Roth, 408 U.S. 564 (1972). Property interests are not created by the constitution; rather they stem from an independent source such as state law or local ordinances. Id. at 577; see Johnston v. Shaw, 556 F. Supp. 406 (N.D. Tex. 1982). You ask whether article 2351(11) creates property rights.

Article 2351(11) provides that each commissioners court shall:

> Provide for the support of paupers and such idiots and lunatics as cannot be admitted into the lunatic asylum, residents of their county, who are unable to support themselves. A county is obligated to provide health care assistance to eligible residents only to the extent prescribed by the Indigent Health Care and Treatment Act.

See also Tex. Const. art. XVI, §8 (county may provide for care of indigent inhabitants). In order to show that article 2351(11) created a property interest protected by

the 14th Amendment, a plaintiff would have to show that he is entitled to some specific benefit under state law:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. . . . It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Board of Regents v. Roth, 408 U.S. at 577 (1972). A key to the determination of whether state law creates a property right is whether state law guarantees specific benefits. One court phrased the issue as whether a state statutory scheme substantially limits the state's discretion or permits it to act "at will." Punikaia v. Clark, 720 F.2d 564, 566 (9th Cir. 1983), cert. denied 469 U.S. 816 (1984). Another court stated:

> [V]iewed functionally, 'property' is what is securely and durably yours under state (or as Goldberg federal) law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain.

Reed v. Village of Shorewood, 704 F.2d 943, 948 (7th Cir. 1983). Another key to the determination of whether a property right exists is whether people have relied on the provision of certain benefits. Board of Regents v. Roth, 408 U.S. at 577.

Article 2351(11) has given rise to several lawsuits in federal district courts in which plaintiffs have sued a Texas county claiming that article 2351(11) creates an entitlement to financial assistance from the county and that the county may not deprive persons of that entitlement without procedural due process. In Johnston v. Shaw, 556 F. Supp. 406 (N.D. Tex. 1982), the court considered whether article 2351(11), together with eligibility standards established by Lubbock County, created an entitlement. The court determined that article 2351(11) in conjunction with the Lubbock County guidelines

created a constitutionally protected property interest. _Id._ at 412. The court expressed doubt, however, as to whether article 2351(11) alone created an entitlement. _Id._

In 1984 the Fifth Circuit issued two opinions in cases in which plaintiffs had sought a determination that article 2351(11) itself created an entitlement. _Mireles v. Crosby County_, 724 F.2d 431 (5th Cir. 1984); _Stephens v. Bowie County_, 724 F.2d 434 (5th Cir. 1984). In both cases the Fifth Circuit held that the district court had properly invoked the doctrine of abstention. _See generally Railroad Commission of Texas v. Pullman_, 312 U.S. 496 (1941). The court in _Mireles_, using language virtually identical to that in _Stephens_, wrote:

> The district court properly invoked the abstention doctrine because it is unclear whether article 2351, §11, alone, can be the basis for a finding of a constitutionally cognizable property interest. The language of the statute is broad and has been construed only twice by the Texas courts, once holding that the support obligation includes 'proper care, attention, and treatment during sickness,' _Monghon and Sisson v. Van Zandt County_, 3 Tex.Civ.Cas. 240 (Ct. App. 1886), and later stating that one who dies without estate sufficient to defray the cost of medical services rendered is not _per se_ a pauper within the statute. _Willacy County v. Valley Baptist Hospital_, 29 S.W.2d 456, 457 (Tex. Civ. App.1930). What services a county is to provide and whether it must provide them at no cost or at a reduced rate remains unsettled. Moreover, there is no authoritative statement from the state courts or legislature defining who may qualify as a pauper. Thus, the second _Pullman_ factor is present: the scope and extent of the entitlement of resident indigents to support remains uncertain.

_Mireles_ at 433. You are asking us to resolve the state law issue raised in _Mireles_ and _Stephens_, that is, whether article 2351(11) itself creates a property right, and, if so, the nature of that right.

A version of what is now article 2351(11) was adopted by the Texas legislature in 1876, 8 Tex. Gen. Laws at 887 (1876). See also 1 Tex. Gen. Laws at 1201 (1836)(similar statute adopted by congress of Republic of Texas). The various versions of the statute have been worded in a way that indicates that counties are required, not merely authorized, to support paupers. Cf. Tex. Const. art.XVI, §8 (counties may provide for care for its indigent inhabitants). Also, several cases have stated that article 2351(11) requires counties to provide support for paupers. See Monghon and Sisson v. Van Zandt County, 3 Tex. Civ. Cas. 240, 241-42 (Ct. App. 1886); City of Wichita Falls v. Travelers Insurance Co., 137 S.W.2d 170, 174 (Tex. Civ. App. - Fort Worth 1940). Most attorney general opinions that have discussed article 2351(11) have considered whether it authorizes certain expenditures rather than whether it requires certain expenditures, but a number of those opinions have stated that article 2351(11) places a mandatory duty on counties. Attorney General Opinions O-2217 (1940); O-2474 (1940); S-126 (1954); C-246 (1964); C-293 (1964); M-605 (1970); M-680 (1970); MW-33 (1979); MW-533 (1982) JM-65 (1983). A number of those opinions make clear, however, that it is left to the discretion of each county to determine how to meet its obligation to the poor. See Attorney General Opinions O-2217 (1940); C-246 (1964); MW-533 (1982); see also Attorney General Opinions WW-683 (1959); H-892 (1976). But see Attorney General Opinion MW-33 (1979) (county liable for treatment of indigent at joint city-county hospital). In other words, section 2351(11) has been interpreted by this office as a directive to counties to take some action to provide for indigents, but it has never been interpreted as itself requiring a particular level of care for a defined group of persons.

The conclusion that article 2351(11) itself requires no particular level of welfare services is supported by the action of the 69th Legislature in regard to indigent health care. For many years article 2351(11) was interpreted as requiring counties to provide health care for indigents. See Monghon and Sisson v. Van Zandt County, 3 Tex. Civ. Cas. 240 (Ct. App. 1886). Because of various problems created by the legislature's past failure to establish specific standards for indigent health care, the 69th Legislature enacted the Indigent Health Care and Treatment Act. Acts 1985, 69th Leg., 1st C.S., ch. 1, §1, at 2, codified as art. 4438f, V.T.C.S. See generally Bill Analysis to S.B. 1, 69th Leg. (1985), on file in Legislative Reference Library. That act established requirements

for county provision of indigent health care, and it authorized the Department of Human Services to establish more specific guidelines. Art. 4438f, §2.03 (eligibility provisions); §3.01 (required health care services). The legislature also amended article 2351(11) to clarify that the Indigent Health Care and Treatment Act, rather than article 2351(11), governed county responsibility for indigent health care. Acts 1985, 1st C.S., ch. 1, §4, at 33. The bill analysis to the Indigent Health Care and Treatment Act acknowledges that in the past the law -- that is, article 2351(11) -- did not provide guidelines governing counties' obligation to provide indigent health care. Before the enactment of the Indigent Health Care Act, the bill analysis states, 40 percent of the poor in Texas lived in counties without any clearly defined responsibilities for indigent health care. The Indigent Health Care and Treatment Act was intended to remedy that situation. Id. The legislature did not, however, enact legislation to provide guidelines governing counties' obligation to support paupers in areas other than health care. The legislature's failure to adopt standards governing provision of general welfare services by counties at the time it adopted standards governing provision of health care services is an indication that the legislature was content to allow the counties to continue to exercise their discretion in determining the nature and extent of the welfare services they provide in areas other than health care.

We conclude, therefore, that the legislature did not intend article 2351(11) to require counties to provide any particular level of welfare services. Furthermore, the 100-year-old practice of allowing counties to define the nature and extent of their obligations under article 2351(11) cannot have created legitimate expectations of any particular level of welfare benefits apart from those benefits that counties have chosen to provide. Thus, we do not believe that article 2351(11) itself creates property rights cognizable under the 14th Amendment. It has been suggested, however, that the 14th Amendment may be invoked to require a county to define its obligations under article 2351(11). We do not think that the 14th Amendment is the appropriate remedy for such a problem.

In 1984 a federal district court in Georgia considered a similar issue. Scoggins v. Moore, 579 F. Supp. 1320 (N.D. Ga.), aff'd 747 F.2d 1466 (11th Cir. 1984). The plaintiffs in Scoggins argued that a Georgia law that required counties to set standards governing the

issuance of malt-beverage licenses created a property right enforceable under the 14th Amendment. The court rejected that argument, holding that even where state law requires a political subdivision to promulgate standards that themselves might create a property right, the state law alone does not create a property right:

> GA. CODE ANN. §5A-502 (Harrison 1981) also does not create a protectible property interest. Section 5A-502 outlines the state-law procedural requirements that govern the decision to grant or deny a malt-beverage license. One such requirement is that the 'governing authority [of a county] <u>shall set forth ascertainable standards in the local licensing ordinance</u> upon which all decisions pertaining to [malt-beverage] permits or licenses shall be based. . . .' <u>Id.</u> §5A-502(b)(1) (emphasis added). Section 5A-502 does not create a protectible property interest because it merely requires the promulgation of standards for the issuance of a malt-beverage license. It does not itself outline standards which, if met, would lead to the issuance of a malt-beverage license. Thus, Section 5A-502 does not create the concrete expectation necessary for the creation of a constitutionally protectible property interest. <u>See generally</u> <u>Durham</u>, <u>supra</u>, at 1180-81; <u>Shamie v. City of Pontiac</u>, 620 F.2d 118, 120-21 (6th Cir. 1980).
>
> If an ordinance, which outlined standards for the issuance of a malt-beverage license, was promulgated pursuant to section 5A-502, the plaintiffs would probably possess a protectible property interest.

<u>Scoggins v. Moore</u>, 579 F. Supp. at 1325 (N.D. Ga.), <u>aff'd</u> 747 F.2d 1466 (11th Cir. 1984). The <u>Scoggins</u> court pointed out in a footnote that the plaintiffs might have a cause of action in a Georgia court for a violation of section 5A-502 because of the county's failure to promulgate the required standards but that a violation of section 5A-502 does not necessarily mean that federal due process guarantees have been violated. <u>Id.</u> at 1326 n. 9.

Your question raises a similar issue. Article 2351(11) requires counties to make some provision for paupers. The legislature, however, does not provide guidelines and has left it to the counties to determine the nature and extent of their provision for paupers. As the Scoggins court noted, a county will probably create property interests if it promulgates guidelines or creates expectations by its actions. By doing nothing -- even if it is in violation of state law by doing nothing -- a county creates no expectations and thus no property rights enforceable under the due process clause. See Rotunda, Nowak & Young, Treatise on Constitutional Law: Substance and Procedure §17.5, V.2 (1986) (if a person has no claim of entitlement, there need not be any process at all); see also Weber v. City of Sachse, 591 S.W.2d 563, 568 (Tex. Civ. App. 1979, no writ)(state law requiring county to fund a county police force of not less than six patrolmen did not create entitlement to any specified level of law enforcement protection). We do not address whether a cause of action could be brought against a county for failure to provide in any way at all for the support of paupers.

You submitted with your request a petition presented to Crosby County asking Crosby County to provide support to farm workers. The petition suggests that in the past Crosby County has provided certain types of support to indigents. Whether Crosby County has created property interests by generating legitimate expectations of support is a fact question that we cannot address in the opinion process. See Quinn v. Syracuse Model Neighborhood Corporation, 613 F.2d 438, 448 (2d Cir. 1980) (longstanding pattern of practice can establish an entitlement).

You also ask whether article III, section 52, of the Texas Constitution affects a county's obligation to provide financial assistance to paupers. Article III, section 52, prohibits the donation of public funds to individuals:

> (a) Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever . . . .

That provision does not mean, however, that a political subdivision may not make any expenditure that benefits a private individual. Attorney General Opinion H-912 (1976). In Barrington v. Cokinos, 338 S.W.2d 133 (Tex. 1960), the court wrote:

> [A]n expenditure for the direct accomplishment of a legitimate public . . . purpose is not rendered unlawful by the fact that a privately owned business may be benefited thereby.

Id. at 140. The question, then, is whether support of paupers is a proper public purpose. The Texas Constituion itself makes clear that the support of paupers is a public purpose. See Tex. Const. art. XVI, §8 (allowing counties to provide a poor house and farm). See also Housing Authority of City of Dallas v. Higginbotham, 143 S.W.2d 79,89 (Tex. 1940) (providing housing for low-income families serves a public purpose). Therefore, expenditure by a county for the support of paupers does not violate article III, section 52, of the Texas Constitution. We do not address the propriety of any particular expenditure for the support of paupers.

## S U M M A R Y

Article 2351(11), which provides that commissioners courts shall provide for the support of paupers, does not by itself create property rights cognizable under the due process clause of the 14th Amendment to the United States Constitution.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General