

## KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

February 12, 2025

The Honorable Daniel M. Gonzalez
Dimmit County Attorney
103 North 5th Street
Carrizo Springs, Texas 78834

**Opinion No. KP-0482**

Re: Authority of a county commissioners court to use county labor and equipment to open and close graves in private cemeteries (RQ-0541-KP)

Dear Mr. Gonzalez:

On behalf of the Dimmit County Commissioners Court ("Commissioners Court"), you ask several questions regarding the use of county labor and equipment to open and close graves in private cemeteries.[1] You tell us it has long been the practice of the commissioners "to assist the public in opening and closing gravesites in Dimmit County" ("County"). Request Letter at 2. You explain that, after advising the Commissioners Court you believe the current practice is prohibited by state law, the Commissioners Court posed several questions in an attempt "to find a way to continue to dig and open graves" in private cemeteries. *Id.*

**Government Code chapter 791 does not authorize a county to enter an interlocal cooperation contract with a cemetery organization if the cemetery organization is not a governmental entity.**

You first ask whether the Commissioners Court may "enter into an Interlocal Cooperation Contract or agreement with the local private cemetery organization[s] to assist them in digging and opening graves pursuant to Chapter 791 of the Texas Government Code." *Id.* The purpose of chapter 791—the Interlocal Cooperation Act ("Act")[2]—is "to increase the efficiency and effectiveness of local governments by authorizing them to contract, to the greatest possible extent, with one another and with agencies of the state." TEX. GOV'T CODE § 791.001. Specifically, the Act authorizes a local government to contract or agree with another local government or certain

---

[1] *See* Letter from Hon. Daniel M. Gonzalez, Dimmit Cnty. Att'y, to Hon. Ken Paxton, Tex. Att'y Gen. at 2 (May 7, 2024), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2024/RQ0541KP.pdf ("Request Letter").

[2] *See* TEX. GOV'T CODE § 791.002 (providing that chapter 791 "may be cited as the Interlocal Cooperation Act").

federally recognized Indian tribes to perform governmental functions and services. *See id.* § 791.011(a). The term "[l]ocal government" means a:

> (A) county, municipality, special district, junior college district, or other political subdivision of this state or another state;
>
> (B) local government corporation created under Subchapter D, Chapter 431, Transportation Code;
>
> (C) political subdivision corporation created under Chapter 304, Local Government Code;
>
> (D) local workforce development board created under Section 2308.253; or
>
> (E) combination of two or more entities described by Paragraph (A), (B), (C), or (D).

*Id.* § 791.003(4). The term "[p]olitical subdivision" is defined to include "any corporate and political entity organized under state law." *Id.* § 791.003(5); *see also Dallas Area Rapid Transit v. Amalgamated Transit Union Loc. No. 1338*, 273 S.W.3d 659, 661 n.13 (Tex. 2008) (acknowledging that political subdivisions as defined in subsection 791.003(5) are governmental entities). The Act also authorizes a local government that is a party to an interlocal agreement to contract with a state agency, as defined by section 771.002 of the Government Code,[3] or a similar agency in another state. TEX. GOV'T CODE § 791.011(b). A contract between a local government and an entity that is not another local government, an Indian tribe, or a state agency is not an interlocal cooperation contract authorized under Chapter 791 of the Government Code.[4] Your characterization of the cemetery organizations as "private" suggests they are not governmental entities with which the County may contract under the Act.[5] To the extent they are not, chapter 791 does not authorize the County to enter into an interlocal cooperation contract with them.[6]

---

[3] Section 771.002 defines the term "[a]gency" to include: (1) "a department, board, bureau, commission, court, office, authority, council, or institution of state government;" (2) "a state university or college, a junior college district, or any service or part of a state institution of higher education;" (3) a local workforce development board; and (4) certain statewide job or employment training programs for disadvantaged youth. TEX. GOV'T CODE § 771.002(1).

[4] We note that a local government that is a party to an interlocal contract also may contract with certain organizations to supervise the performance of an interlocal contract. *Id.* § 791.013. Because you do not ask about the supervision of an interlocal contract, this authority is not relevant to your question. *See generally* Request Letter.

[5] A cemetery organization can indeed be a private entity. *See* TEX. HEALTH & SAFETY CODE § 711.001(7) (defining "[c]emetery organization").

[6] As your second question is contingent on the ability of the County to enter into an agreement under the Act, we need not address it. *See* Request Letter at 2 (asking if the County "is able to enter into an Interlocal agreement, can they charge a nominal fee to the local private cemetery organizations or local funeral home for assisting in digging and opening graves").

**Health and Safety Code chapter 694 does not authorize a county to establish a burial program that extends beyond the disposition of the body of a deceased pauper.**

You next ask whether the County has "authority under Chapter 694 of the Health and Safety Code to establish an Indigent Program or Pauper's Burial Association to continue to open and close graves in Dimmit County, which are owned by private cemetery associations." Request Letter at 2. Chapter 694 contains regulations governing the burial and disposal of dead bodies. *See* TEX. HEALTH & SAFETY CODE §§ 694.001–.003. While it does not directly authorize an "Indigent Program" or a "Pauper's Burial Association," it does address the burial of a deceased pauper's body.[7] *Id.* § 694.002(a). Subsection 694.002(a) provides that "[t]he commissioners court of each county shall provide for the disposition of the body of a deceased *pauper*."[8] *Id.* (emphasis added). Subsection 694.002(e) expressly authorizes a county to use its resources for this purpose. *Id.* § 694.002(e) (authorizing a county to "create a fund to be used by the county to pay the costs incurred in disposing of the bodies of deceased paupers and administering the county's body disposition activities"). The disposition of a deceased pauper's body pursuant to subsection 694.002(a) may include the costs of burial, which could encompass the opening and closing of graves. *See* Tex. Att'y Gen. Op. No. JC-0228 (2000) at 2 (explaining that disposition costs include the costs of burial). In addition, a county may acquire, or accept as a donation, a burial plot located in a private cemetery for the disposition of the body of a deceased pauper.[9] *See* Tex. Att'y Gen. Op. Nos. GA-0235 (2004) at 4 (concluding a commissioners court has implied authority under subsection 694.002 to acquire land for the interment of deceased paupers), JC-0228 (2000) at 1 (concluding a county has authority under Local Government Code section 81.032 to receive donations toward the disposition of the body of a deceased pauper).

With that general discussion of chapter 694, we turn back to your specific question about County authority to "establish an Indigent Program or Pauper's Burial Association to continue to

---

[7] The term "pauper" is not defined in chapter 694. *See* TEX. HEALTH & SAFETY CODE §§ 694.001–.003. This office has construed the term in predecessor statutes, however, explaining that it "convey[s] the meaning that the person has neither money nor estate, is without credit, and is unable to maintain himself because of inability to work or to obtain employment." Tex. Att'y Gen. Op. No. O-1500 (1939) at 5 (citation omitted); *see also, e.g.*, Tex. Att'y Gen. Op. No. O-2633 (1940) at 2 (observing that "all paupers are indigent persons," and "whether or not an indigent person is a pauper" is a "question of fact for the commissioners' court" that "will be determined by the degree of [a person's] indigency"); *see generally* Act of May 18, 1989, 71st Leg., R.S., ch. 678, §§ 1, 5, 1989 Tex. Gen. Laws 2230, 3000, 3163 (reenacting predecessor statute within the newly adopted Health and Safety Code). Courts have interpreted the term similarly. *See, e.g.*, *Willacy Cnty. v. Valley Baptist Hosp.*, 29 S.W.2d 456, 458 (Tex. App.—San Antonio 1930, no writ) (observing a person "was not a pauper, in law or fact," where "he died without leaving an estate sufficient to defray the cost" of medical services).

[8] When a county has charge or control of a body that is required to be buried at public expense, the county must notify the Texas Funeral Service Commission ("Commission"). TEX. HEALTH & SAFETY CODE § 691.023(a). If the Commission does not require the county to deliver it the body, the county "shall pay all costs of preparation for burial, including costs of embalming." *Id.* § 691.023(b).

[9] We note that any action taken by a county to dispose of the body of a deceased pauper on property owned by a private cemetery association—whether taken through a formal county program or otherwise—generally needs to occur with the consent of the association and in compliance with any association rules and regulations. *See, e.g.*, *id.* §§ 711.031(a) (authorizing a cemetery organization to adopt and enforce rules related to a variety of matters, including "the use, care, control, management, restriction, and protection of the cemetery"), .003 (requiring a cemetery organization to maintain a record of each burial in the cemetery).

open and close graves in Dimmit County, which are owned by private cemetery associations." Request Letter at 2. As noted previously, chapter 694 does not refer to an indigent program and we do not have sufficient details regarding the proposed program to consider whether it is authorized under chapter 694. To the extent the County proposes to establish a program that extends beyond the disposition of the body of a deceased pauper, it is not authorized under chapter 694. *See id.* at 1 (stating the program would be "to assist County constituents in time[s] of need" suggesting the Commissioners Court may be seeking to assist the public at large).

As for a burial association, the Insurance Code defines it to mean "an individual, firm, partnership, association, or corporation engaged in the business of providing burial or funeral benefits payable partly or wholly in merchandise or services, not to exceed $150 or the value thereof" and "includes a burial company and a burial society." TEX. INS. CODE § 888.001(1). Nothing in chapter 694 of the Health and Safety Code authorizes a county to establish a burial association under section 888.001 of the Insurance Code.

**Section 713.021 of the Health and Safety Code does not relieve a county establishing a perpetual trust fund from the prohibition against using county employees or equipment to open or close graves when those graves are in a private perpetual care cemetery or a cemetery maintained by a religious or fraternal organization.**

Your final question asks whether section 713.021 of the Health and Safety Code authorizes the County to "establish a perpetual trust fund to provide for the digging and closing of graves." Request Letter at 2. Because you suggest this may be prohibited by sections 713.026 and 713.028, we understand that this would involve the use of County equipment and employees. *Id.*; *see* TEX. HEALTH & SAFETY CODE §§ 713.026(a) (prohibiting, with exceptions, a trustee from using county employees or equipment to maintain a neglected or unkept public or private cemetery), 713.028 (authorizing the use of county equipment to open and close graves in only certain cemeteries). We further understand from your letter that the opening and closing of graves would occur in a perpetual care cemetery or cemetery maintained by a religious or fraternal organization. Request Letter at 2 (describing the cemeteries at issue as perpetual care cemeteries "or private cemeteries maintained by a religious or fraternal organization").

Chapter 713 of the Health and Safety Code addresses municipal and county regulation of cemeteries. *See generally* TEX. HEALTH & SAFETY CODE §§ 713.001–.029. Section 713.021 authorizes a commissioners court to establish by resolution "a perpetual trust fund to provide maintenance for a neglected or unkept public or private cemetery in the county." *Id.* § 713.021. The commissioners court must appoint the county judge as trustee of the fund. *Id.* Subsection 713.026(a) prohibits the trustee, a member of the commissioners court, or any elected county officer from paying or using "public funds or county employees, equipment, or property to maintain a neglected or unkept public or private cemetery[,]"[10] except as provided by sections 713.027, 713.0271, and 713.028. *Id.* § 713.026(a). The County may, therefore, establish a

---

[10] This prohibition "does not apply to a county if: (1) the county owned the cemetery from September 1, 1976, through January 1, 1979; or (2) the county used county funds, employees, equipment, or property to maintain a county-owned cemetery during 1976" and the county files certain information with the secretary of state. TEX. HEALTH & SAFETY CODE § 713.026(b)–(c). You provide no facts suggesting this exception applies to the County. *See generally* Request Letter.

perpetual trust fund under section 713.021, but only to maintain a neglected or unkept private cemetery.[11] And the County may not use its employees or equipment in this effort unless allowed by one of the exceptions.[12]

Section 713.028 allows the use of county employees and equipment to open and close graves in older cemeteries, as follows:

> (a) For purposes of historical preservation or public health, safety, or welfare, a commissioners court may use public funds, county employees, county inmate labor as provided by Article 43.10, Code of Criminal Procedure, and county equipment to maintain a *cemetery that is at least 50 years old*. . . .
>
> (c) At the discretion of the commissioners court, a county may permit the use of public funds, county employees, county inmate labor as provided by Article 43.10, Code of Criminal Procedure, and county equipment to open and close graves in a cemetery described by Subsection (a).

*Id.* § 713.028(a), (c) (emphasis added). Yet, even as to an older cemetery, the Legislature expressly provides this authority "does not apply to a perpetual care cemetery or a cemetery maintained by a religious or fraternal organization." *Id.* § 713.028(b). Thus, a county establishing a perpetual trust fund under section 713.021 is not relieved from the prohibition against using county employees or equipment to open or close graves when those graves are in a private perpetual care cemetery or a cemetery maintained by a religious or fraternal organization.

---

[11] You do not tell us that the cemeteries at issue are neglected or unkept. *See generally* Request Letter.

[12] Two exceptions, sections 713.027 and 713.0271, relate to certain cemeteries owned, operated, and maintained by a county and are not relevant here. TEX. HEALTH & SAFETY CODE §§ 713.027, .0271; *see generally* Request Letter (describing only private, not county-owned cemeteries).

**S U M M A R Y**

Under Chapter 791 of the Texas Government Code—the Interlocal Cooperation Act—a county may not agree to perform a governmental function or service for a cemetery organization unless the cemetery organization is a local government, an Indian tribe, or a state agency.

Pursuant to Health and Safety Code subsection 694.002(a), the commissioners court of a county "shall provide for the disposition of the body of a deceased pauper." To the extent a county proposes to establish a burial program that extends beyond the disposition of the body of a deceased pauper, it is not authorized under chapter 694.

Health and Safety Code section 713.021 authorizes a commissioners court to establish by resolution "a perpetual trust fund to provide maintenance for a neglected or unkept public or private cemetery in the county." A county that establishes a perpetual trust fund is not relieved from the prohibition against using county employees or equipment to open or close graves when those graves are in a private perpetual care cemetery or a cemetery maintained by a religious or fraternal organization.

Very truly yours,

KEN PAXTON
Attorney General of Texas


BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

CHRISTY DRAKE-ADAMS
Assistant Attorney General, Opinion Committee