**Luis J. LAJE, Plaintiff-Appellee,**

v.

**R. E. THOMASON GENERAL HOSPITAL, Defendant-Appellant.**

**No. 80–2168.**

United States Court of Appeals,
Fifth Circuit.

Jan. 14, 1982.

Rehearing and Rehearing En Banc
Denied Feb. 9, 1982.

L. W. Anderson, Dallas, Tex., George Rodriguez, Jr., County Atty., El Paso, Tex., for defendant-appellant.

Gibbins & Spivey, Paul E. Knisely, Broadus A. Spivey, Austin, Tex., for plaintiff-appellee.

Before INGRAHAM and TATE, Circuit Judges.[*]

INGRAHAM, Circuit Judge:

Appellee Dr. Luis Laje filed this suit under 42 U.S.C. § 1983[1] following his discharge from the post of Clinical Director of Psychiatry at R. E. Thomason General Hospital (Appellant). Appellant is a component of the El Paso County Hospital District, in El Paso, Texas. Dr. Laje's complaint alleged that his discharge, and the hospital's failure to process his request for staff privileges, deprived him of substantive and procedural due process. In a prior appeal this court held that the decision of appellant's Board of Managers to deny Dr. Laje's staff privileges was supported by substantial evidence. *Laje v. R. E. Thomason General Hospital*, 564 F.2d 1159 (5th Cir. 1977), *cert. denied* 437 U.S. 905, 98 S.Ct. 3091, 57 L.Ed.2d 1134 (1978). This appeal follows a jury award of $20,000 for procedural due

---

[*] Due to his death on December 22, 1981, Judge Ainsworth did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. 46(d).

[1] 42 U.S.C. § 1983 (1976) provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979.

process violations surrounding Dr. Laje's discharge, and $32,400.26 for lost salary under his employment contract. The district court, 502 F.Supp. 185, set attorney's fees at $25,649.34. Appellant raises the following issues on appeal: (1) Whether the hospital is entitled to Eleventh Amendment immunity from suit; (2) whether there is sufficient evidence to support the award of $20,000 representing "mental anguish and emotional distress" resulting from procedural due process violations; (3) whether back pay is recoverable in this suit; and (4) whether the award of attorney's fees is excessive. We hold the hospital may not claim Eleventh Amendment immunity, and affirm the judgment below with the exception of the recovery of back pay.

Dr. Laje entered into a two-year employment contract with appellant for the period July 15, 1971–July 14, 1973. During his tenure Dr. Laje and his immediate superior developed differences of opinion regarding treatment methodology and hospital procedures. On August 17, 1972, Dr. Laje was informed by the hospital administrator that he was fired, effective the next day, primarily because of insubordination. Allegations of incompetence were added later. Dr. Laje was permitted to address the Hospital Finance Committee on August 20, the following Sunday. At the close of this meeting the committee informed Dr. Laje that he would be given thirty days to resign or be discharged. After further attempts by Dr. Laje to persuade the board chairman and hospital administrator to reinstate him, Dr. Laje was terminated. This suit was filed in November 1973. The discharge issue and a request for staff privileges were severed, and the former held in abeyance while the staff privileges request was remanded to the hospital's Board of Managers for full hearing. After hearings in April 1974, the Board denied the request and its findings were eventually upheld by this court. *Laje v. R. E. Thomason General Hospital, supra.*

The discharge issue was then remanded to the Board of Managers for hearing. The Board upheld the decision to discharge Dr. Laje on April 5, 1979. On cross-motions for summary judgment, the district court found the decision to discharge Dr. Laje was supported by substantial evidence and therefore dismissed the substantive due process claims, but further found that Dr. Laje had been denied procedural due process prior to the April 1979 hearing before the Board. Accordingly, the district court ordered a jury trial to determine whether Dr. Laje could recover actual damages and attorney's fees for this deprivation of procedural due process. The jury trial took place on September 3 and 4, 1980, and resulted in the award described above.

## I. *Eleventh Amendment Immunity*

Although appellant's original brief did not contest the application of Section 1983 to this case, at oral argument appellant raised the possibility of Eleventh Amendment immunity in light of this court's en banc decision in *Van Ooteghem v. Gray*, 654 F.2d 304 (5th Cir. 1981). We permitted both parties to submit supplemental briefs on this issue. Faced with the "sensitive" question whether Texas counties should be considered agencies or departments of the state, the en banc court in *Van Ooteghem* remanded for an initial determination by the district court. *Id.* at 306; *see also Downing v. Williams*, 624 F.2d 612, 626 (5th Cir. 1980), *vacated*, 645 F.2d 1226 (5th Cir. 1981). The Eleventh Amendment status of the R. E. Thomason General Hospital, however, is readily apparent from the material before us and we see no need to further prolong this litigation.[2]

2. At the outset, appellee argues that appellant's Section 1983 claims should be deemed waived or abandoned. To the extent appellant raises an Eleventh Amendment defense, however, the claims are jurisdictional in nature and may be raised and considered at any time. *Edelman v. Jordan*, 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974). It is not clear whether appellant is also contending that the hospital is not a "person" under Section 1983. Nevertheless resolution of that question would apparently involve the same analysis as the Eleventh Amendment question. *See Van Ooteghem v. Gray*, 654 F.2d 304, 306 (5th Cir. 1981). In *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct.

■ While local government entities may, in some circumstances, be considered an arm of the state, thereby deriving the state's Eleventh Amendment immunity, *see Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir. 1981) (state institution), independent local political subdivisions are not entitled to such immunity even though they may "exercise a 'slice of state power' ". *Lake Country Estates, Inc. v. Tahoe Planning Agency*, 440 U.S. 391, 400–01, 99 S.Ct. 1171, 1176–77, 59 L.Ed.2d 401 (1979). A federal court must examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself. *Mount Healthy City School Dist. Bd. of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *Hander v. San Jacinto Junior College*, 519 F.2d 273, 279 (5th Cir. 1975). Courts typically look at the degree of local autonomy and control, and most importantly whether the funds to defray any award would be derived from the state treasury. *Moore v. Tangipahoa Parish School Bd.*, 594 F.2d 489 (5th Cir. 1979); *Campbell v. Gadsden County Dist. School Bd.*, 534 F.2d 650 (5th Cir. 1976).

■ Applying these principles to R. E. Thomason General Hospital, it appears that the relationship between the hospital and the state is simply too attenuated to support an extension of Eleventh Amendment immunity. The hospital is part of the El Paso County Hospital District, created pursuant to Article 4494n, Tex.Rev.Civ.Stat. Ann. (Vernon 1976). Under Article 4494n, creation of a hospital district begins by local initiative. Art. 4494n, § 1; *cf. Goss v. San Jacinto Junior College*, 588 F.2d 96, 99 n.5 (5th Cir.), *modified on other grounds*, 595 F.2d 1119 (5th Cir. 1979). Hospital districts are financed through special local taxes entirely separate from other county or state taxes. Art. 4494n, § 2, and through bonds sold in the name and upon the full faith and credit of the hospital district. *Id.* § 3. Title to land, buildings and equipment used for medical purposes is vested in hospital districts. *Id.* § 4. The Board of Hospital Managers appointed by the County Commissioners Court enjoys virtually unlimited autonomy and control over hospital affairs, including, significantly, the power "to sue and be sued and to promulgate rules and regulations for the operation of the hospital," make all hiring decisions and enter into contracts with counties and the state and federal government. *Id.* § 5. A hospital district may acquire property by eminent domain. *Id.* § 9. Finally, and most telling in our view, the Texas Constitution provides a hospital district "shall never become a charge against the State of Texas." Const. Art. 9, § 4 (Vernon 1955). It is true, as appellant points out, that the activities of a hospital district are subject to approval of the county commissioners court in several instances. Similar supervision, however, did not prevent the Court from considering that, "[o]n balance," a local Ohio school board was nevertheless not an arm of the state. *Mount Healthy, supra*, 429 U.S., at 280, 97 S.Ct. at 572. *See also Holley v. Lavine*, 605 F.2d 638, 642–44 (2d Cir. 1979), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980).

We are left with the definite and distinct impression that a hospital district, and a component thereof such as appellant, is an independent legal entity in relation to the State of Texas. *Bexar County Hospital Dist. v. Crosby*, 320 S.W.2d 247, 249 (Tex. Civ.App.—San Antonio 1958), *modified*, 160 Tex. 116, 327 S.W.2d 445 (1959).

2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities and other local government units were "persons" under Section 1983, but limited its holding to "local government units which are not considered part of the State for Eleventh Amendment purposes," *id.* at 690 n.54, 98 S.Ct. at 2035 n.54. States are considered non-persons for Section 1983 purposes. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The issue before us accordingly resolves to whether appellant is an arm or alter ego of the state. *See Mount Healthy City School Dist. Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); Bosselman & Bender, *Potential Immunity of Land Use Control Systems from Civil Rights and Anti-Trust Liability*, 8 Hast.Const.L.Q. 453, 461–68 (1981).

This appellant is not an arm of the state for Eleventh Amendment purposes, *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); this finding makes it unnecessary to proceed to a consideration of the effect of the waiver of sovereign immunity in the Texas Tort Claims Act. Tex. Rev.Civ.Stat.Ann.Art. 6252–19 (Vernon 1970). *Cf. Savage v. Pennsylvania*, 475 F.Supp. 524, 530 (E.D.Pa.1979), *aff'd*, 620 F.2d 289 (3d Cir. 1980).

## II. *Damages for Denial of Procedural Due Process*

■ Appellant attacks the jury's award of $20,000 for mental anguish and emotional distress on several grounds, claiming that there was insufficient evidence to support either an award of damages or the amount of damages awarded, and that the district court failed to allow evidence that Dr. Laje's discharge was justified. The crux of appellant's argument is that damages are recoverable *only* to the extent they flow from a deprivation of procedural due process, excluding any emotional distress resulting from the discharge itself (which was substantively justified). Both parties correctly indicate that *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), is controlling on this question.

In *Carey* the Court held that no injuries are presumed to result from a deprivation of procedural due process; rather, a plaintiff must prove actual compensable injury, possibly including emotional distress, in order to recover more than nominal damages. Discussing the particular problem presented here, the Court stated:

> Moreover, where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. But as the Court of Appeals held, the injury caused by a justified deprivation, including distress, is not properly compensable under § 1983. This ambiguity in causation, which is absent in the case of defamation *per se*, provides additional need for requiring the plaintiff to convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself.

*Id.* at 263, 98 S.Ct. at 1052. Appellant strenuously argues that any distress suffered by Dr. Laje in this case resulted only from the fact he was discharged, and that Dr. Laje was unaware of any constitutional deficiency surrounding his discharge. The record discloses, however, that the district court was acutely aware of the difficulty of proof presented by this situation, and instructed the jury as follows:

> You are further instructed that Doctor Laje was provided a proper hearing before the R. E. Thomason General Hospital Board of Managers in April of 1979. At the conclusion of that hearing, the board of managers decided that there was sufficient evidence to support the grievances against Doctor Laje and to discharge him for the stated reasons of insubordination and for failing to accept the oral instructions of the medical director of the hospital, Doctor Marks. You are, therefore, not to award Doctor Laje any damages resulting from the discharge itself, rather, your award of damages, if any, shall be based solely upon the injury to Doctor Laje, if any, caused by the failure to provide him his right to a proper and fair hearing during the period between August 18, 1972 and April 5, 1979.

Thus, the jury was apprised of the proper standard for damages under *Carey*; and it was specifically told that the reasons for Dr. Laje's discharge were no longer in issue. There is sufficient evidence upon which the jury could have found that Dr. Laje suffered injury from the deprivation of due process in this case: Dr. Laje and his wife both testified specifically that the summary proceedings surrounding his dismissal caused severe anxiety and distress, and that these feelings were not relieved until after the full hearing on his discharge in April 1979. The jury has made the necessary evaluations of credibility and demeanor. Where a jury has been properly instructed, and its verdict is supported by sufficient evidence, the verdict must be upheld. *Pe-*

*trites v. J. C. Bradford & Co.,* 646 F.2d 1033, 1035 (5th Cir. 1981); *Patterson v. Belcher,* 302 F.2d 289, 297 (5th Cir. 1962). Appellant offers us no basis for concluding that an award of $20,000 for mental anguish and emotional distress is excessive as a matter of law and we perceive none. *See Hatfield v. Anthony Forest Products Co.,* 642 F.2d 175, 178 (5th Cir. 1981).

Appellant further contends that the jury should not have been permitted to calculate damages based on the period from August 18, 1972 until April 5, 1979, the point at which the district court determined Dr. Laje received a proper hearing on his discharge, because the hearing that took place in April 1974 concerning denial of staff privileges afforded Dr. Laje a full opportunity to "bare his breast." The hospital argues, therefore, that any emotional distress resulting from denial of due process would not have extended beyond that date. On the previous appeal to this court we found that the 1974 hearing comported with due process, while observing that the discharge issue had been held in abeyance, and the hearing was limited to the issue of denial of staff privileges. *Laje v. R. E. Thomason General Hospital,* 564 F.2d 1159, 1161–62 (5th Cir. 1977), *cert. denied,* 437 U.S. 905, 98 S.Ct. 3091, 57 L.Ed.2d 1134 (1978). Contrary to appellant's suggestion, however, the jury was made aware of the 1974 hearing, and more specifically that Dr. Laje was represented by counsel, witnesses were presented, and that the hearing explored Dr. Laje's history of employment with the hospital; this subject was discussed during cross-examination of Dr. Laje by appellant's counsel. Therefore, it appears that whether Dr. Laje's emotional distress continued past the 1974 hearing was a question of fact, and the jury was given sufficient information to decide that question.[3]

### III. Back Pay

The jury further awarded $32,400.26 representing the income Dr. Laje would have earned on the remainder of his contract had he not been terminated, less sums earned in mitigation during this period. While this appeal was pending, *Wilson v. Taylor,* 658 F.2d 1021 (5th Cir. 1981), was decided. *Wilson* interpreted the Supreme Court's decision in *Carey* to preclude an award of back pay in cases involving procedurally defective discharges. *Id.* at 1033–35.

As the *Wilson* panel noted, the recovery of back pay has been a troublesome issue in this circuit. In *Carey* respondents were school students who had been suspended without procedural due process. The court of appeals in that case instructed that, on remand, if school officials could show that the suspensions were justified and would have taken place even if a proper hearing had been held, then no damages for injuries from the suspensions were recoverable. Such damages, the court of appeals believed, "would constitute a windfall, rather than compensation." After reviewing this background the Supreme Court stated, "we do not understand the parties to disagree with this conclusion. Nor do we." The Court proceeded to say in a footnote "A few courts appear to have taken a contrary view in cases where public employees holding property interests in their jobs were discharged with cause but without procedural due process," citing among other cases our opinion in *Zimmerer v. Spencer,* 485 F.2d 176 (5th Cir. 1973), 435 U.S. at 260, 260 n.15, 98 S.Ct. at 1050, 1050 n.15.

Until *Wilson,* this circuit had not directly addressed this aspect of the *Carey* decision although other circuits considering the question concluded that back pay is not recoverable where an employer can show

---

**3.** Appellant very briefly complains that the district court erred in allowing Dr. Laje to make reference to the failure of the hospital to arbitrate the dispute pursuant to a provision in the contract of employment. Although appellant concedes that the district court instructed the jury that failure to arbitrate was unrelated to the denial of due process at issue in this suit, appellant maintains that "the jury was nevertheless confused by this evidence." Especially in light of the court's instruction, we are unable to determine how or whether any such confusion resulted; in light of appellant's failure to show prejudice we must conclude that any error regarding admission of this evidence was harmless. Fed.R.Civ.P. 61.

that the discharge would still have occurred absent procedural defects. *See e.g., Kendall v. Board of Education of Memphis City,* 627 F.2d 1, 6 (6th Cir. 1980); *Burt v. Abel,* 585 F.2d 613, 616 (4th Cir. 1978). However, back pay was included in the award in several cases, notably *Glenn v. Newman,* 614 F.2d 467 (5th Cir. 1980). Examining the results in these cases, and noting that none came to grips with *Carey,* the *Wilson* panel concluded that under the authority of *Carey* the plaintiff could not recover back pay or other benefits that would have accrued during the period following the procedurally improper discharge. This is the clearest and most direct statement on the issue in this circuit and we are bound to follow it.[4]

In this case, the Board of Managers upheld Dr. Laje's discharge after its hearing in April 1979, and the district court determined that the procedures followed in this hearing were adequate and the decision supported by substantial evidence. These conclusions are amply supported by the record. Accordingly, recovery of lost salary for the period August 18, 1972 to July 14, 1973, the balance of Dr. Laje's contract, was inappropriate and must be eliminated from the award. *Wilson v. Taylor,* 658 F.2d 1021, 1035 (5th Cir. 1981).

## IV. *Attorney's Fees*

Appellant contests the award of attorney's fees of $25,649.34 under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C.A. § 1988 (Supp. 1979), on the grounds, apparently, that the award did not adequately distinguish between prevailing and non-prevailing issues and that an award of $100 per hour for one of Dr. Laje's attorneys is "clearly excessive." The decision to award attorney's fees, and determination of an appropriate amount of fees, are matters directed to the discretion of the district court and will not be disturbed absent abuse of this discretion. *Davis v. City of Abbeville,* 633 F.2d 1161, 1163 (5th Cir. 1981); *Harkless v. Sweeny Independent School District,* 608 F.2d 594, 596 (5th Cir. 1979). In its order regarding attorney's fees, the district court laboriously reviewed the guidelines for attorney's fees established by *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), with particular concern for allowing an award only with respect to those issues upon which appellee prevailed. The court referred to affidavits and billing sheets submitted by appellee's counsel, making several deductions from the amounts claimed; apparently no controverting affidavits were filed by appellant. We perceive no abuse of discretion in the court's calculations. A remand is required, however, so that the district court may consider whether any modification of the award is required in light of the disposition of this appeal. In particular, the district court should take into consideration the deletion of the portions of the award attributable to back pay, as well as the services rendered on the issues affirmed. *Jones v. Diamond,* 594 F.2d 997, 1027 (5th Cir. 1979), *cert. granted in part,* 453 U.S. 911, 101 S.Ct. 3141, 69 L.Ed.2d 993 (1981); *Morrow v. Dillard,* 580 F.2d 1284, 1300 (5th Cir. 1978).

## V. *Conclusion*

The judgment entered by the district court is affirmed as to recovery of $20,000 for mental anguish and emotional distress but reversed as to $32,400.26 for loss of income. On remand, the district court shall

---

4. Appellee urges us to overlook *Wilson* in light of dicta in *Owen v. City of Independence,* 445 U.S. 622, 632 n.12, 100 S.Ct. 1398, 1406 n.12, 63 L.Ed.2d 673 (1980), just as, in its view, the *Wilson* panel overlooked prior panel opinions in light of the dicta in *Carey.* We reject this invitation. *Owen* considered whether municipalities could claim qualified immunity from suit under Section 1983, and noted purely in passing that an award earlier in the case, later vacated by the court of appeals, had included "damages in lieu of back pay" measured by the amount the individual would have earned had he remained on the payroll until his intervening retirement. 445 U.S. at 632 n.12, 100 S.Ct. at 1406 n.12. The Supreme Court gave absolutely no indication of approval or disapproval of this formula, in contrast to its opinion in *Carey,* which provides a clear directive that damages for procedural due process violations be compensatory only.

make any required modifications of its award of attorney's fees in light of the disposition of this appeal.

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings regarding attorney's fees.