**Debindra RAM DITTA, a minor By and Through her father and next friend, Kesho RAM DITTA, and by and through her mother and next friend Rosabelle Ram Ditta, Appellants,**

v.

**MARYLAND NATIONAL CAPITAL PARK AND PLANNING COMMISSION, Appellee.**

No. 86–3836.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 5, 1987.

Decided July 6, 1987.

Bernard P. Horn (Oliver Denier Long, Long & Long, P.A., Bethesda, Md., on brief), for appellants.

Anthony M. Ventre, Asst. Co. Atty. (Paul A. McGuckian, Co. Atty., Joann Robertson, Associate Co. Atty., Rockville, Md., on brief), for appellee.

Before PHILLIPS and SPROUSE, Circuit Judges, and MERHIGE, United States District Judge for the Eastern

District of Virginia, sitting by designation.

SPROUSE, Circuit Judge:

Debindra Ram Ditta[1] appeals from the district court's order dismissing her personal injury action against the Maryland-National Capital Park and Planning Commission (Commission). The district court held that the Commission was a state agency and therefore immune from suit under the eleventh amendment of the United States Constitution. We reverse.

The Commission is a state-created entity charged with operating a system of parks and planning the physical development of parts of Montgomery and Prince George's Counties, Maryland. *See* Md. Ann.Code art. 28, § 1–101 *et seq.* Ram Ditta suffered serious injury while using a swing set in one of the parks operated by the Commission in Montgomery County. She instituted this diversity action[2] against the Commission in federal district court in Maryland. The sole question on appeal is whether the Commission is entitled to eleventh amendment immunity.

■ The eleventh amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. By its terms, the amendment applies only to "one of the United States." It does not immunize political subdivisions of the state, such as municipalities and counties, even though such entities might exercise a "slice of state power." *Lake Country Estates, Inc. v.*

*Tahoe Regional Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979).[3] A particular state entity may be entitled to immunity, however, if, in its operations, the state is the real party in interest. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of the Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). To be the real party in interest, the state need not be named as a defendant. It is only necessary that the named party be the *alter ego* of the state. *See Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299, 301 (6th Cir.1984), *cert. denied,* 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985); *Blake v. Kline,* 612 F.2d 718, 721 (3d Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980).

■ While many factors must be considered in determining whether an entity is the *alter ego* of the state, it is generally held that the most important consideration is whether the state treasury will be responsible for paying any judgment that might be awarded. *See Hall,* 742 F.2d at 304; *Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 727 (5th Cir.1982); *Blake,* 612 F.2d at 723–24, 726; *Miller-Davis Co. v. Illinois State Toll Highway Authority,* 567 F.2d 323, 327 (7th Cir.1977). We agree that this is a most important consideration for "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest." *Ford Motor Co.,* 323 U.S. at 464, 65 S.Ct. at 350. Other important inquiries underlying our consideration of eleventh amendment immunity include, but are not necessarily limited to, whether the entity exercises a significant

1. Since the plaintiff-appellant is a minor, this action was commenced on her behalf by her parents, Kesho and Rosabelle Ram Ditta.

2. Ram Ditta is a resident of Vancouver, British Columbia, Canada.

3. In *Lake Country Estates,* the Supreme Court denied eleventh amendment immunity to the Tahoe Regional Planning Agency (TRPA), a bi-state agency created by California and Nevada

to plan the development of the Lake Tahoe Basin. The Court based its decision on the following factors: both states expressly disclaimed any intent to confer immunity on the agency; the Compact creating the TRPA regarded it as a political subdivision; funding was provided by the counties, not the states; and neither state treasury was responsible for judgments rendered against the agency. *Id.* at 401–02, 99 S.Ct. at 1177.

degree of autonomy from the state,[4] whether it is involved with local versus statewide concerns, and how it is treated as a matter of state law.[5]

■ Here, it is apparent that a judgment against the Commission would not be paid from the state treasury. It is true that the Commission participates in Montgomery County's self-insurance program, in accordance with § 2–111 of Article 28 of the Maryland Code.[6] Its participation is outlined in an agreement between the County and the Commission. Under the terms of the agreement, the Commission is to establish a fund to underwrite its insurance coverage. Moreover, if a particular judgment exceeds its coverage, the County will advance the funds necessary to pay the judgment. The Commission then is obligated to appropriate money in the next fiscal year to reimburse the County.[7] At no time, however, is it contemplated that the state treasury will be used to pay a judgment.

The Maryland General Assembly has endowed the Commission with considerable autonomy. It exists as a "body corporate," Md.Ann.Code art. 28, § 1–101, the same as counties and municipalities. Md.Ann.Code art. 23A, § 1. It can sue and be sued in its corporate capacity. Md.Ann.Code art. 28, § 2–110. Moreover, it can enter into many types of contracts, including: employment contracts, Md.Ann.Code art. 28, § 2–107; leases, permits and concessions, Md.Ann. Code art. 28, § 5–110; and the purchase, sale or exchange of real property, Md.Ann. Code art. 28, §§ 5–111, 5–112. Its autonomy is evidenced in other ways. The Commission consists of ten members—five appointed by Montgomery County and five appointed by Prince George's County. Md. Ann.Code art. 28, § 2–101. The state appoints no members, nor does it exercise any degree of control over the counties' appointment or removal of Commission members. Md.Ann.Code art. 28, §§ 2–101 to 2–103. The budgetary process applicable to state agencies is expressly inapplicable to the Commission. Md.Ann.Code art. 28, § 2–118(a).[8] Instead of submitting its budget to the state for approval, the Commission submits its budget to officials of Montgomery and Prince George's Counties. Instead of participating in the state civil service system, the Commission has its own merit system for evaluating its employees' performance. Md.Ann.Code art. 28, § 2–112. Further, it is not represented in legal

---

**4.** Decisions of sister federal courts have focused on numerous factors, *see, e.g., Hall,* 742 F.2d at 302 (Sixth Circuit—nine factors); *Blake,* 612 F.2d at 722 (Third Circuit—nine factors); *Patterson v. Ramsey,* 413 F.Supp. 523, 529 (D.Md. 1976), *aff'd on other grounds,* 552 F.2d 117 (4th Cir.1977) (six factors), but we think many of them can be considered under the rubric of "autonomy."

**5.** Although a federal court may consider how the entity is treated under state law, "[t]he question of whether an agency is the *alter ego* of the state and thereby immune from federal jurisdiction under the eleventh amendment is a question of federal, not state, law." *Blake,* 612 F.2d at 722.

**6.** Section 2–111 provides in pertinent part:
  (a).... The Commission shall establish an adequate comprehensive insurance program:
  (1) To compensate for injury to or death of persons or damage to property, resulting from negligence, malpractice or any other type of civil or tortious action of the Commission, or of its members, staff, employees, and agents acting within the scope of their duties, acting without malice, and in the absence of gross negligence....

.    .    .    .    .

  (c).... All of the insurance program required under subsection (a) of this section ... may be provided:

.    .    .    .    .

  (2) By a self-insurance program.

.    .    .    .    .

  (d).... The Commission may cooperate and enter into agreements with Montgomery County or Prince George's County, or both ... for the purpose of obtaining and providing insurance coverage in the most economical manner for any type of insurance protection....
  Md.Ann.Code art. 28, § 2–111.

**7.** The Commission is funded almost entirely by property taxes assessed against the residents of Montgomery and Prince George's Counties. Md.Ann.Code art. 28, §§ 6–106 to 6–110.

**8.** Section 2–118(a) provides in pertinent part:
  None of the provisions of any public general law governing the preparation and filing of budgets by agencies of the State of Maryland are applicable to the budgetary procedure of the Commission.
  Md.Ann.Code art. 28, § 2–118(a).

matters by the Attorney General (as state law requires of state agencies), but by county attorneys.[9] Finally, the Commission derives its operating revenues solely from Montgomery and Prince George's Counties, either through the assessment of property taxes or the issuance of bonds. Md.Ann.Code art. 28, §§ 6–101 to 6–110.[10]

A third factor given weight in this equation is whether a political entity is involved primarily with local or state-wide concerns. *See Jacintoport Corp. v. Greater Baton Rouge Port Commission*, 762 F.2d 435, 442 (5th Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986).[11] As noted, the Commission is charged with operating a system of parks and planning the physical development of parts of Montgomery and Prince George's Counties. It has no involvement, however, in operating or developing areas beyond the borders of these two counties. Moreover, the majority of benefits resulting from its operation and management of parks and related lands within Montgomery and Prince George's Counties will inure only to the residents of those counties. *See, e.g.*, Md. Ann.Code art. 28, § 5–107, ("lands acquired under this article ... shall be held by the State or the Commission for the general benefit of the citizens of the State of Maryland and especially for the benefit of the citizens and residents of Montgomery and Prince George's Counties. Title to the lands may not be conveyed by the State, nor may such use be extinguished without the approval by resolution of the Commission.") Hence, this factor also weighs against eleventh amendment immunity.

The Commission urges, however, that the final factor in the *alter eqo* equation—the way in which the Commission is treated by the Maryland state courts—is more important than, and outweighs, all others. In *O & B, Inc. v. Maryland-National Capital Park and Planning Commission*, 279 Md. 459, 369 A.2d 553 (1977), the Court of Appeals of Maryland held that the Commission was a state agency, and therefore immune from tort suits, under the doctrine of state sovereign immunity. The court acknowledged that Montgomery and Prince George's Counties exercised some degree of local control over the Commission. However, it premised its decision on the fact that the Commission was created by the state, its powers and duties were set forth in state statutes, the counties could only exercise control over the Commission to the extent permitted by state law, the Commission was not a county agency subject to the requirements of the county's charters, and certain statutory provisions indicated the Commission acted more like a state agency than a local agency. *Id.* at 465, 369 A.2d at 556.[12] Consequently, the Maryland court concluded that the Commission was a state agency and entitled to state sovereign immunity.

A state court's view of the status of a state political entity is, of course, an important factor for a federal court to consider in determining whether that entity is entitled to eleventh amendment immunity. The district court heavily relied on the state court's decision in *O & B*. However, questions of eleventh amendment immunity

---

**9.** In this appeal, for example, the Commission is represented, not by the Attorney General, but by the County Attorney for Montgomery County.

**10.** Some of these tax revenues are used to police and maintain the playground and recreational facilities within the Commission's jurisdiction. Other tax revenues are used to pay the principal and interest on bonds issued by the Commission. These bonds are sold to raise the money necessary to acquire additional parkland and to develop existing areas. The bonds are guaranteed by Montgomery and Prince George's Counties, not the state of Maryland. Md.Ann.Code art. 28, §§ 6–101 to 6–105.

**11.** In *Jacintoport*, the Fifth Circuit emphasized that its "local/state" test was similar and parallel to the "governmental/proprietary" test used

by the Third Circuit in *Blake, supra,* and the Sixth Circuit in *Hall, supra.*

**12.** Specifically, the court found that the Commission acted as the state's representative in the acquisition and development of property; that contracts entered into by the Commission may be binding on the state; that title to land acquired by the Commission may vest in the state; that land acquired by the Commission inured to the benefit of all citizens of Maryland; and that the Commission was to make recommendations to the General Assembly concerning the development of the land within its jurisdiction. *Id.* at 465, 369 A.2d at 556.

are ultimately governed by federal law. *See Blake,* 612 F.2d at 722. The criteria established by federal law are, of course, sufficiently flexible to allow us to give deference to the rationale used by a state court in deciding questions of state sovereign immunity. Our inquiry, however, must go beyond that single factor and include all factors bearing on the federal policy entitling appropriate governmental entities to eleventh amendment immunity.

Balancing all of these criteria, we conclude that the Commission is not the *alter eqo* of the state. Three of the four factors we consider, *i.e.,* the state treasury's responsibility for any judgment, the Commission's autonomy from the state and the nature of the Commission's functions, all weigh heavily against eleventh amendment immunity. We, of course, respect the state court's decision in *O & B* on the issue of state sovereign immunity and weigh it in the entire equation. In the final analysis, however, the criteria devised by federal courts for deciding federal eleventh amendment immunity, on balance, requires our holding that the Commission is not entitled to eleventh amendment immunity.

The judgment of the district court is, therefore, reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.