United States Court of Appeals,

Fifth Circuit.

No. 91-4970

Summary Calendar.

The AMERICAN BANK AND TRUST COMPANY OF OPELOUSAS, Plaintiff-Appellant,

v.

Fred C. DENT, etc., et al., Defendants,

Lynda Drake, In Her Capacity as Commissioner of Financial Institutions for the State of Louisiana, Defendant-Appellee.

Feb. 10, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before GARWOOD, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant American Bank & Trust Company of Opelousas, Louisiana (American Bank) brought this suit in the United States District Court for the Western District of Louisiana seeking a declaratory judgment that a Louisiana statute allegedly prohibiting it from selling insurance was unconstitutional, and an injunction against any acts by the Louisiana Commissioner of Financial Institutions to enforce the statute. The district court dismissed the suit, concluding that it was barred by the Eleventh Amendment. We reverse and remand.

**Facts and Proceedings Below**

On March 21, 1990, American Bank wrote to Fred C. Dent, Commissioner of Financial Institutions for the State of Louisiana (Commissioner), asking on behalf of itself and other similarly situated Louisiana state-chartered banks that the Commissioner promulgate parity regulations permitting those banks to act as general agents for the sale of life and casualty insurance. The letter observed that because of a combination of federal and state statutes and regulations, state banks were denied this ancillary business opportunity while the financial institutions in Louisiana against whom they competed were not: national banks were permitted to engage in general insurance agency

activities in communities of less than five thousand persons;[1] federal-chartered and state-chartered thrift institutions were allowed to engage in such activities through their service corporation subsidiaries, *see* 12 C.F.R. § 545.74(c)(6)(ii); La.Reg. 541; and, credit unions could sell insurance to their members, *see* La.Rev.Stat.Ann. § 6:644(B)(9) (West 1986).

The parity regulations, the letter contended, should enable state banks to engage in general insurance activities to the same extent as national banks; specifically, they should allow state banks to act as general insurance agents through branches located in communities of less than five thousand persons. American Bank called upon the Commissioner to promulgate such regulations notwithstanding what it acknowledged to be the "clear prohibition" of La.Rev.Stat.Ann. § 6:121(B)(2),[2] arguing that that statute was facially and in application violative of the Equal Protection

---

[1] 12 U.S.C. § 92 [note] provides that any national bank "located and doing business in any place the population of which does not exceed five thousand inhabitants ... may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, act as the agent for any fire, life, or other insurance company authorized by the authorities of the State in which such bank is located to do business in said State." Although since 1952 the United States Code has omitted this section on the basis that it was not included in a 1918 amendment and was thereby repealed, the Comptroller of the Currency has promulgated regulations under it, *see* 12 C.F.R. § 7.7100, and the Supreme Court and this Court have also assumed that it is still in force. *See Commissioner v. First Security Bank of Utah, N.A.,* 405 U.S. 394, 402 & n. 12, 92 S.Ct. 1085, 1090 & n. 12, 31 L.Ed.2d 318 (1972); *First National Bank of La Marque v. Smith,* 610 F.2d 1258, 1261 n. 6 (5th Cir.1980); *Saxon v. Georgia Association of Independent Insurance Agents, Inc.,* 399 F.2d 1010 (5th Cir.1968). The D.C.Circuit, however, recently addressed the question squarely and concluded that Congress repealed the section in 1918 (though in all likelihood because of inadvertently placed quotation marks in a 1916 enactment). *Independent Insurance Agents of America v. Clarke,* 955 F.2d 731, 734-39 (D.C.Cir.), *reh'g en banc denied,* 965 F.2d 1077 (D.C.Cir.1992), *cert. granted,* --- U.S. ----, 113 S.Ct. 810, --- L.Ed.2d ---- (1992).

[2] Section 6:121(B)(2) provides in pertinent part:

> "Notwithstanding any other provision of this Title, the commissioner shall not authorize any bank, bank holding company, or subsidiary thereof to engage in any insurance activity except an insurance activity in which a bank may engage pursuant to the provisions of R.S. 6:242(A)(6)."

La.Rev.Stat.Ann. § 6:242(A)(6)(a) authorizes a state bank to act as the agent for an insurance company "only with respect to credit insurance which, within the terms and conditions authorized by law, is limited to assuring repayment or partial repayment of the outstanding balance due on a specific extension of credit by a bank ... and collecting premiums on those policies issued through the bank by such insurance company." Section 6:242(A)(6)(a) also provides that "[n]otwithstanding any other provisions of this Title, no bank shall engage or be authorized to engage in any insurance activity that is not expressly permitted by this Paragraph."

Clause. The letter noted that, by virtue of La.Rev.Stat.Ann. §§ 6:902(B) and 6:903, the Commissioner could promulgate parity regulations to give state-chartered savings and loan associations the same authority as their federal counterparts (and that the Commissioner's predecessor in office had promulgated such regulations), and argued that section 6:121(B)(2)'s prohibition of similar regulations for state banks was arbitrary and discriminatory state action.

On April 3, 1990, the Commissioner responded with a one-sentence letter advising American Bank that its request was denied. On April 11, American Bank commenced this action in federal district court seeking declaratory and injunctive relief against Dent in his official capacity as Commissioner.[3] The complaint sought a declaratory judgment that La.Rev.Stat.Ann. §§ 6:121(B)(2) and 6:242(A)(6) denied American Bank equal protection of the law guaranteed by the Fourteenth Amendment and 42 U.S.C. § 1983 and that the Commissioner's refusal to promulgate parity regulations was therefore unconstitutional. It also requested an injunction against any acts by the Commissioner or his employees to enforce sections 6:121(B)(2) and 6:242(A)(6).

On June 15, 1990, the Commissioner moved to dismiss on the ground that, *inter alia,* the suit against him in his official capacity was in substance a suit against the State of Louisiana and thus barred by the Eleventh Amendment. The motion also argued that the court should dismiss the complaint under any of three abstention doctrines: (1) the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), under which federal courts should abstain from interfering with pending state proceedings; (2) the principle of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), under which, when timely and adequate state court review is available, federal courts sitting in equity should avoid disrupting a state's efforts to implement a coherent policy through an administrative scheme; and (3) the doctrine of *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), under which federal courts should refrain from granting equitable relief on constitutional grounds if resolution of an unsettled question of state law may obviate the constitutional question. This last type of abstention was urged because of

[3]Lynda Drake has since been substituted as the party defendant in her capacity as Deputy Commissioner of Financial Institutions.

La.Rev.Stat.Ann. § 6:242(C) (West Supp.1992), a statute enacted in 1988 that had not been invoked by American Bank. Section 6:242(C) provides:

> "In addition to any other powers, a state bank shall have and possess such rights, powers, privileges, and immunities of a national bank domiciled in this state as may be prescribed by rule or regulation promulgated by the commissioner. In the event of a conflict between this Subsection or any rule or regulation promulgated hereunder and any other provision of law, the provisions of this Subsection shall control."

The Commissioner alleged in his motion to dismiss that American Bank's request raised the question—not yet addressed by the Louisiana courts—whether section 6:242(C)'s apparent general grant of authority to promulgate the type of regulations sought by American Bank overrode the specific prohibition of 6:121(B)(2). On the advice of counsel that it did not, the Commissioner had denied American Bank's request.

Following a hearing on the motion to dismiss on September 12, 1991, the district court accepted the Commissioner's Eleventh Amendment argument, and entered judgment on November 4 dismissing the case under Fed.R.Civ.P. 12(b)(1). The judgment did not address the question of abstention. No opinion was entered by the district court. American Bank brings this appeal.

## Discussion

American Bank argues that the district court erred in dismissing the suit on sovereign immunity grounds because this case falls within the exception to Eleventh Amendment immunity carved out by *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and succeeding cases. *Young* established the principle that the Eleventh Amendment does not bar a suit in federal court against a state official to enjoin his enforcement of a state law alleged to be unconstitutional. The Supreme Court, though it has clarified that *Young* cannot be extended to permit a suit for equitable monetary restitution from the state treasury for a past breach of a legal duty, *Edelman v. Jordan,* 415 U.S. 651, 662-72, 94 S.Ct. 1347, 1355-60, 39 L.Ed.2d 662 (1974), has reaffirmed the basic holding of *Young* as to purely prospective relief on numerous occasions. *See, e.g., Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984); *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157 n. 6, 98 S.Ct. 988, 994 n. 6, 55 L.Ed.2d 179 (1978);

*Georgia Railroad & Banking Co. v. Redwine,* 342 U.S. 299, 304, 72 S.Ct. 321, 324, 96 L.Ed. 335 (1952).

We agree with American Bank that the present case falls squarely within the *Young* doctrine. The Commissioner's arguments to the contrary are unavailing. First, the Commissioner argues that the suit is barred because "the state is the real, substantial party in interest," *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), in that any relief granted would profoundly affect Louisiana's system for regulating banks and insurance companies. Relying on *Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 727 (5th Cir.1982), the Commissioner suggests that the inquiry for this Court is whether the Office of Financial Institutions is merely an *alter ego* of the state. These arguments, however, misapprehend the essence of the *Young* holding. *Young* did not establish a scheme in which courts are to pierce the plaintiff's pleadings to decide if the suit is in substance one for relief against the state; indeed, since the nominal defendant in *Young,* the attorney general of Minnesota, was merely acting under his general duty to enforce the statutes of the state, such a test would have compelled a different outcome in that case. Rather, the Court in *Young* held that enforcement of an unconstitutional law is by definition—commentators often describe it as a "fiction"[4]—not an official act because the state *cannot* confer authority on its officers to violate the Constitution or federal law. *Young,* 209 U.S. at 160, 28 S.Ct. at 454. The *Ford Motor Co.* case was not one governed by the *Young* doctrine because it was a suit for a refund of taxes from the state, *i.e.,* retroactive monetary relief. *See Ford Motor Co.,* 323 U.S. at 464, 65 S.Ct. at 350. *Laje* was also a suit for monetary damages, and the discussion relied upon by the Commissioner deals with an antecedent issue not pertinent to this case: Whether the defendant hospital had a sufficiently close relationship with the state to be entitled to raise the defense of sovereign immunity in the first place. *See Laje,* 665 F.2d at 727. In this case, American Bank does not contend that the Commissioner is not a state official (or that the Office of Financial Institutions, which has not been named as a defendant, is not an arm of the State of Louisiana). No

---

[4]*See, e.g.,* 17 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4231, at 567 (1988); 1 R. Rotunda, J. Nowak, & J. Young, *Treatise on Constitutional Law: Substance and Procedure* § 2.12, at 87 (1986).

challenge is made to the Commissioner's ability in a proper case to invoke the Eleventh Amendment; rather, it is simply argued—correctly—that because of the nature of relief sought he must contend with the *Young* exception.

Second, the Commissioner seeks to escape the reach of *Young* by arguing that this case falls within the group excluded from the *Young* doctrine by *Pennhurst, i.e.,* those seeking prospective injunctive relief on the basis of state law. *See Pennhurst,* 465 U.S. at 103-06, 104 S.Ct. at 909-11. This argument is utterly without merit, however, because American Bank is alleging that sections 6:121(B)(2) and 6:242(A)(6) deny it the equal protection of the laws guaranteed by the Fourteenth Amendment. As is common in *Young* cases, it is a state law that is *challenged* as unconstitutional, but this does not mean that American Bank's cause of action arises under state law; American Bank does not, like the *Pennhurst* plaintiff, rely on an alleged violation of the state statute.

Finally, the Commissioner relies on a statement by the Supreme Court in *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In *Will,* having decided that states were not "person[s]" subject to suit under 42 U.S.C. § 1983, the Court concluded that the same result must apply to state officials sued in their official capacities because "a suit against a state official in his or her official capacity ... is no different from a suit against the State itself." *Id.* at 71, 109 S.Ct. at 2311. The Commissioner's attempt to invoke the Court's statement as dispositive of this Eleventh Amendment case, however (and thus as an implicit abandonment of the *Young* doctrine), is undercut by the *Will* Court's recognition of the special sovereign immunity rules applicable to suits for purely prospective relief, and the limitation of its section 1983 holding to make it consistent with those principles: "Of course a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State.' " *Id.* at 71 n. 10, 109 S.Ct. at 2311 n. 10 (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985)).

For the foregoing reasons, we conclude that the district court erred in dismissing the case "pursuant to Federal Rule of Civil Procedure 12(b)(1) ... because this Court lacks subject matter

jurisdiction."  The Commissioner asks that we consider the abstention arguments raised in the alternative, and dismiss the case on that basis.  Because the abstention doctrines are not exceptions to the federal courts' jurisdiction, but are rather judicially created guidelines defining circumstances in which courts may decline to exercise jurisdiction, *see New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 358-60, 109 S.Ct. 2506, 2512-13, 105 L.Ed.2d 298 (1989), we could not *sustain* the district court's 12(b)(1) dismissal on their authority;  a determination that abstention is warranted would merely allow us to reach a comparable disposition[5] on other grounds.

We conclude, however, that the better course is to remand to the district court to enable it to consider the abstention questions in the first instance.  Even if all the preconditions for abstention are present, the decision whether or not to abstain is generally one involving some exercise of discretion by the district court.[6]  Because the propriety of *Pullman* or *Burford* abstention is not absolutely clear on the present record,[7] we deem it advisable for the matter to be decided by the district court in the first instance.

### Conclusion

Because we conclude that under *Ex parte Young* and its progeny the Eleventh Amendment

---

[5]The appropriate disposition would depend in part on what type of abstention were deemed applicable.  Whereas *Pullman* abstention contemplates merely the postponement of the exercise of federal jurisdiction, *see Harrison v. National Association for the Advancement of Colored People,* 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959), *Burford* rests on the premise that any intervention by a federal court would impermissibly disrupt state regulation, and thus counsels dismissal.  17A Wright, Miller, & Cooper, *supra* note 4, § 4245, at 102.

[6]This and other circuit courts generally review abstention decisions under an abuse-of-discretion standard, *see Allen v. Louisiana State Board of Dentistry,* 948 F.2d 946, 949 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1764, 118 L.Ed.2d 426 (1992);  *Hospital Council of Western Pennsylvania v. City of Pittsburgh,* 949 F.2d 83, 90 n. 4 (3d Cir.1991); *McIntyre v. McIntyre,* 771 F.2d 1316, 1319 (9th Cir.1985), though it has been stated that decisions to *abstain* are reviewed under a standard narrower than that applicable to decisions such as evidentiary rulings, because the discretion to abstain "must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved."  *C-Y Development Co. v. City of Redlands,* 703 F.2d 375, 377 (9th Cir.1983).  *See also Shamrock Development Co. v. City of Concord,* 656 F.2d 1380, 1385 (9th Cir.1981) (although *Pullman* abstention would have been advisable and within the discretion of the district court, the district court's decision to retain the case fell short of an abuse of discretion).

[7]However, we do consider the Commissioner's reliance on the *Younger* abstention doctrine to be obviously unavailing;  there are no pending state judicial proceedings in this case.

does not bar this suit, we reverse the district court's dismissal and remand the case. We decline to make a determination whether abstention is warranted under *Pullman* or *Burford,* in the belief that the Commissioner's abstention arguments are more properly addressed to the district court on remand.

REVERSED AND REMANDED.