**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 00-50485

SOUTHWESTERN BELL TELEPHONE COMPANY,

Plaintiff-Appellee,

VERSUS

CITY OF EL PASO, et al.,

Defendants,

and

EL PASO COUNTY WATER IMPROVEMENT DISTRICT NO.1,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
El Paso Division

March 19, 2001

Before DUHÉ and PARKER, Circuit Judges, and LINDSAY,[*] District Judge.

ROBERT M. PARKER, Circuit Judge:

Appellant El Paso County Water Improvement District No. 1 appeals the district court's

denial of its motion to dismiss on Eleventh Amendment grounds. Because we conclude that the

[*] District Judge of the Northern District of Texas, sitting by designation.

district court applied the proper legal standard in reviewing Appellant's motion, we AFFIRM.

I.

Appellant is a water improvement district created pursuant to Article XVI, Section 59, of the Texas Constitution. Appellant owns a series of irrigation ditches deeded from the United States Bureau of Reclamation to Appellant in January 1996. Development in the area of the ditches has resulted in the development of roads crossing the ditches and in an increase in the demand for telephone service, which is provided by installing telephone lines along such roads. Appellant has established certain application procedures for entities wanting to cross the canals, laterals, and ditches–rights-of-way owned by Appellant. Such procedures require an entity to complete an application, pay an application fee, and obtain a survey. The application must be preliminarily approved by Appellant's Board of Directors, which, upon completion of the survey, assesses a payment against the entity based on the length of the crossing.

Appellee, a telecommunications services provider, brought this action seeking declaratory and injunctive relief against the City of El Paso and Appellant for their alleged violation of the federal Telecommunications Act of 1996 ("FTA"), the Texas Public Utilities Regulation Act ("PURA"), and other state law. Appellee and the City of El Paso have settled their claims. Appellee's claims against Appellant allege, *inter alia*, that under the FTA and PURA, Appellant cannot demand payment and a detailed application from Appellee for laying telephone lines that cross Appellant's rights-of-way.

In response, Appellant counterclaimed against Appellee for trespass and/or taking property for public use without compensation; more importantly, Appellant moved to dismiss Appellant's claims under the Eleventh Amendment, arguing that it was an arm of the State of Texas and thus Appellee's claims were barred by the Eleventh Amendment. The district court, applying our "arm-of-the-state" analysis noted in *Clark v. Tarrant County*, 798 F.2d 736, 744-45 (5th Cir. 1986), held

2

that Appellant was not an arm of the State of Texas, and thus was not entitled to Eleventh Amendment immunity.

## II.

We review the district court's order denying a motion to dismiss on Eleventh Amendment grounds as an appealable collateral order based on an issue of law, *see Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313 (5th Cir. 1999) (per curiam), and we review the district court's conclusions of law *de novo*. *Id.*

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. "[T]he reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). However, the Eleventh Amendment bar to suit in federal courts only extends to states, state officials, and state instrumentalities in appropriate circumstances, and does not extend to counties, similar municipal corporations, and other political subdivisions, even though such entities enjoy a "slice of state power." *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 400-01 (1979); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977); *Moor v. County of Alameda*, 411 U.S. 693, 717-21 (1973); *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890).

When determining whether a state agency or instrumentality may invoke the state's immunity as an arm of the state, courts must review the relationship between the state and the entity in question, examining the essential nature of the proceeding, the nature of the entity created by state law, and whether a money judgment against the instrumentality would be enforceable against the

state.  *Doe*, 519 U.S. at 429-30 (citing *Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 576 (1946); *Mt. Healthy City*, 429 U.S. at  280; *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 45-51 (1994)).

We have stated that this arm-of-the-state analysis requires the examination of "the powers, characteristics and relationships created by state law in order to determine whether [a] suit is in reality against the state itself."  *Hander v. San Jacinto Junior Coll.*, 519 F.2d 273, 279 (5th Cir. 1975) (citing *Aerojet-General Corp. v. Askew*, 453 F.2d 819 (5th Cir. 1971), *cert. denied*, 409 U.S. 892 (1972)); *see also Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982); *United Carolina Bank v. Board of Regents*, 665 F.2d 553, 557 (5th Cir. Unit A 1982); *Jagnandan v. Giles*, 538 F.2d 1166, 1173-74 (5th Cir. 1976), *cert. denied*, 432 U.S. 910 (1977).  In conducting such analysis, we have held that "comparisons [between like entities] cannot substitute for a careful examination of the particular entity at issue."  *McDonald v. Board of Miss. Levee Comm'rs*, 832 F.2d 901, 908 (5th Cir. 1987); *see also Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir.), *cert. denied sub nom. Connick v. Hudson*, 528 U.S. 1004 (1999); *Flores v. Cameron County*, 92 F.3d 258, 268 (5th Cir. 1996).

We have refined the arm-of-the-state analysis to require examination of a variety of factors concerning the particular entity in question.  *See Clark v. Tarrant County*, 798 F.2d 736, 744-45 (5th Cir. 1986).  These factors include (1) whether the state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether it has the right to hold and use property.  *Id.*  These factors are examined as a whole, and no single factor is dispositive.  *Id.* at 745; *see also United Carolina Bank*, 665 F.2d at 557.  However, the second factor, the source

of the entity's funding, is "of considerable importance." *Doe*, 519 U.S. at 904;

*Jacintoport v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 440-41 (5th Cir. 1985), *cert. denied*, 474 U.S. 1057 (1986); *Laje*, 665 F.2d at 727.

Appellant argues that the district court erred by applying the arm-of-the-state analysis established in *Clark* because our prior decisions hold Appellant as an arm of the state entitled to Eleventh Amendment immunity. Specifically, Appellant argues that our decision in *Ysleta Del Sur Pueblo v. El Paso County Water Improvement Dist.*, 222 F.3d 208 (5th Cir.), *cert. denied*, 121 S. Ct. 177 (2000), which affirmed the district court's finding of Eleventh Amendment immunity for Appellant, controls this action. Appellant also argues that our prior decisions in *Kamani v. Port of Houston Authority*, 702 F.2d 612 (5th Cir. 1983), and *Pillsbury Co. v. Port of Corpus Christi Authority*, 66 F.3d 103 (5th Cir. 1995), *cert. denied*, 517 U.S. 1203 (1996), held that the entities at issue in those cases were entitled to Eleventh Amendment immunity by virtue of their creation pursuant to Article XVI, Section 59, of the Texas Constitution. Because Appellant is also created under Article XVI, Section 59, Appellant argues that it is likewise entitled to immunity.

We disagree with both arguments. First, *Ysleta* is not controlling because it conflicts with our prior decisions requiring a careful examination of the nature of an entity claiming immunity. Although *Ysleta* affirmed the district court's holding that Appellant was an arm of the state entitled to immunity, it stated no reasons for the decision except to say that the plaintiff's arguments in that appeal "lack[ed] merit." *Ysleta*, 222 F.3d at 208. In support of this conclusion, *Ysleta* cited *Kamani* and *Pillsbury* without further explanation. *Kamani* was an admiralty action in which the court stated without analysis that the Port of Houston Authority was "a 'creature of state law and a political subdivision of the State of Texas'" entitled to Eleventh Amendment immunity. *Kamani*, 702 F.2d at 613. *Pillsbury* was a breach-of-contract action in which the court held that the Port of Corpus Christi

5

Authority was factually and legally indistinguishable from the Port of Houston Authority, and was thus entitled to immunity under *Kamani*. *Pillsbury*, 66 F.3d at 104.

*Ysleta*'s conflict with prior decisions establishing the arm-of-the-state analysis originates with *Kamani*. Notwithstanding the arm-of-the-state analysis established by decisions such as *Hander*, *Jagnandan*, *United Carolina Bank*, and *Laje*, *Kamani* relied on *McCrea v. Harris County Ship Channel Navigation Dist.*, 423 F.2d 605, 607 (5th Cir.), *cert. denied*, 400 U.S. 927 (1970), in concluding that the Port of Houston Authority was entitled to immunity. However, *McCrea* involved a wrongful death action under the Federal Employers' Liability Act that did not involve the Eleventh Amendment at all. In *McCrea*, the court simply observed that the Port of Houston Authority "is a creature of state law and a political subdivision of the State of Texas operating terminal facilities at the Port of Houston" in concluding that the port was not a "rail carrier" under the FELA. *McCrea*, 423 F.2d at 607. While *McCrea* did examine the port's organizational and operational characteristics, such examination is different from the arm-of-the-state analysis required to determine whether an entity is entitled to Eleventh Amendment immunity. *See Jacintoport*, 762 F.2d at 440 ("It would be inconsistent with this Circuit's test for determining [Eleventh Amendment] immunity to rely on *Miller* [*v. Greater Baton Rouge Port Comm'n*, 74 So.2d 387 (La. 1954)], because immunity of the [entity at issue] was never an issue in that case."). In light of our decisions requiring the application of the arm-of-the-state analysis, *Kamani*'s quotation of *McCrea*'s statement that the Port of Houston is a "creature of state law and a political subdivision of the State of Texas" does not automatically support the conclusion that the Port of Houston Authority is entitled to Eleventh Amendment immunity. An entity is not an arm of the state for Eleventh Amendment purposes simply because it is a creature of state law and a political subdivision of a state. Such conclusion would entirely obviate the arm-of-the-state analysis because every entity claiming Eleventh Amendment immunity is a

6

"creature" of some state law. Moreover, political subdivisons of states are generally *not* entitled to Eleventh Amendment immunity. *See Lake Country Estates*, 440 U.S. at 401; *Lincoln County*, 133 U.S. at 530-31. *Kamani*'s conclusion that the Port of Houston Authority was entitled to immunity by virtue of its status as a creature of state law and a political subdivision of Texas conflicts with the line of precedent beginning with at least *Hander*, *Jagnandan*, *United Carolina Bank*, and *Laje*.

*Pillsbury* continued the conflict by applying *Kamani* to hold that the Port of Corpus Christi Authority was entitled to Eleventh Amendment immunity. This result is not surprising because the Port of Corpus Christi Authority was held to be factually and legally indistinguishable from the Port of Houston Authority in *Kamani*. While *Pillsbury* noted that a proper arm-of-the-state analysis would result in the same conclusion, the conflict created by *Kamani* was not addressed. In addition, the court suggested in dicta that its decision was controlled by *Kamani* because both ports were created pursuant to Article XVI, Section 59.

*Ysleta* thus rests on holdings that conflict with our prior decisions requiring an arm-of-the-state analysis for entities claiming Eleventh Amendment immunity, and the district court did not err when it applied *Clark*'s six-fact or analysis. When two holdings or lines of precedent conflict, the earlier holding or line of precedent controls. *Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir.), *cert. denied sub nom. Billiot v. Anderson*, 525 U.S. 966 (1998). In this action, although *Kamani* was decided before *Clark*, *Clark*'s arm-of-the-state analysis is a consistent part of a line of precedent including at least *Hander*, *Jagnandan*, *United Carolina Bank*, and *Laje*, which were all decided before *Kamani*. Therefore, the district court properly applied *Clark* in denying Appellant's Eleventh Amendment argument. Moreover, even though *Ysleta* was decided before the district court issued its decision, it was published after that decision and thus was not precedent for the district court. *See* Fifth Cir. R. 47.5.4.

We also reject Appellant's second argument that it is entitled to Eleventh Amendment immunity by virtue of its creation pursuant to Article XVI, Section 59. Even if *Kamani* and *Pillsbury* applied the proper arm-of-the-state analysis, they do not state that an entity is entitled to Eleventh Amendment immunity simply because they are created under a particular state law. While *Pillsbury* noted that both ports were created pursuant to Article XVI, Section 59, there is no suggestion in that decision that the particular law under which an entity is created is the sole factor in determining the issue of immunity. Our decisions clearly forbid such a result. *See, e.g.*, *Jacintoport*, 762 F.2d at 439-40. Moreover, even though *Ysleta* affirmed the district court's conclusion that we established a "bright-line test" for determining whether an entity created pursuant to Article XVI, Section 59, is entitled to immunity, such a test is contrary to our decisions requiring the application of the arm-of-the-state analysis and to the principle that comparisons or analogies between like entities cannot substitute for a proper analysis of the particular entity claiming immunity. *See, e.g.*, *McDonald*, 832 F.2d at 908. Indeed, such a test is no test at all.

Finally, because Appellant does not challenge the district court's application of the individual factors of the arm-of-the-state analysis, we will not address such application. While Appellant argues in its reply brief that Appellee's defense of the district court's application of the factors is "fundamentally flawed," Appellant does not specifically challenge the district court's analysis, and we will not construe Appellant's argument as such.

III.

Based on the reasons stated above, we AFFIRM the district court's order denying Appellant's

8

motion to dismiss on Eleventh Amendment grounds.